UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------x

FORTRESS CREDIT OPPORTUNITIES I, LP and :
FORTRESS CREDIT OPPORTUNITIES II, LP, :

                                                :    07-CV-7369 (HB)

         Plaintiffs, :

                                            :

    -against- :

                                            :

WAYNE C. COLEMAN, THE ROYALTY :
COMPLIANCE ORGANIZATION and MOSS :
ADAMS LLP :

                                            :

         Defendants. :

----------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT MOSS ADAMS LLP'S
## MOTION, PURSUANT TO FED.R.CIV.P. 12(c),
## FOR JUDGMENT DISMISSING THE AMENDED COMPLAINT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
*Attorneys for Defendant Moss Adams LLP*
150 East 42nd Street
New York, New York 10017
(212)490-3000

*Of Counsel:*

Thomas R. Manisero
Peter J. Larkin
Jill F. Spielberg

2978402.1

Defendant Moss Adams LLP ("Moss Adams") respectfully submits this reply memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(c), for judgment dismissing the Amended Complaint[1] as against Moss Adams on the grounds that the claim against Moss Adams is, on the face of the pleadings, barred by the applicable statute of limitations.

## ARGUMENT[2]

### The Statute of Limitations Accrued On February 17, 2004, When Plaintiffs Received Moss Adams' Work Product

Plaintiffs do not dispute that Moss Adams' work product was faxed to them on February 17, 2004.    Indeed, plaintiffs admit in paragraph 72 of their Amended Complaint that "Moss Adams provided a copy of its [work product] to Fortress on or about February 17, 2004." They also admit in paragraph 17 of the Amended Complaint that Moss Adams' report was dated February 17, 2004, and that it was provided to plaintiffs at the same time that it was provided to Moss Adams' client, The Songwriters Collective.    The contemporaneous documentation confirms this to be the case (see Manisero Moving Dec., Exhibit C[3]), and plaintiffs have not advanced any allegation or offered any proof, documentary or otherwise, to controvert this critically important fact.

---

[1] Moss Adams initially moved for judgment on the pleadings dismissing plaintiffs' original Complaint. In response, and without seeking leave to amend, even though Moss Adams had already answered the original Complaint, plaintiffs filed an Amended Complaint in purported reliance on Rule 4 of the Individual Practices of Judge Harold Baer, Jr. Moss Adams has answered the Amended Complaint, and now seeks judgment on the pleadings dismissing that Amended Complaint on the same grounds as its initial motion—the claim pleaded against Moss Adams is time-barred.

[2] This reply memorandum only addresses Point II in plaintiffs' Memorandum of Law in Opposition because Point I is fully addressed in the accompanying affidavit of Thomas R. Manisero, in which Mr. Manisero swears that it was his understanding that in return for his agreement to accept service on behalf of the Moss Adams by Federal Express, Moss Adams would have 30 days to respond to the Summons and Complaint.

[3] Citations to "Manisero Moving Dec." refer to the Declaration of Thomas R. Manisero, dated September 18, 2007, and submitted in support of Moss Adams' motion.

2978402.1

Since plaintiffs received Moss Adams' report on February 17, 2004, any negligence-based claim plaintiffs might have against Moss Adams in respect of that report accrued on that date and no later. Indeed, the very cases cited by plaintiffs in their opposition to Moss Adams' motion confirm this rule rather than supporting plaintiffs' proposition that the statute of limitations accrued at some later time.

In the controlling New York case on this issue, *Ackerman v. Price Waterhouse* (84 N.Y.2d 535, 620 N.Y.S.2d 318 (1994)), which recently was reaffirmed in *Williamson v. PricewaterhouseCoopers LLP* (9 N.Y.3d 1, 840 N.Y.S.2d 730 (2007)), the New York Court of Appeals held that:

> A malpractice cause of action sounds in tort and, therefore, absent fraud, accrues when an injury occurs, even if the aggrieved party is then ignorant of the wrong or injury....In the context of a malpractice action against an accountant, the claim accrues upon the client's receipt of the accountant's work product since this is the point that a client reasonably relies on the accountant's skill and advice and, as a consequence of such reliance, can become liable for tax deficiencies. This is the time when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court.

*Ackerman*, 84 N.Y.2d at 541. A central tenet in the Court of Appeals' rationale leading to the *Ackerman* holding was the desire to maintain and reinforce definite statutory periods designed to bar adjudication of stale claims. *See Ackerman*, 84 N.Y.2d at 542-53.

Plaintiffs' argument that measuring accrual from the receipt of the accountant's work product is limited to tax preparation engagements misses the mark and, quite simply, misstates the law. *Ackerman* and its progeny speak to malpractice in connection with an accountant's work product, and are not limited to "tax preparation" services as plaintiffs suggest. Indeed, the Court of Appeals' most recent case on the issue—*Williamson v. PricewaterhouseCoopers LLP*—set receipt of the accountant's work product as the date of accrual in an engagement to audit

3

financial statements. While the *Williamson* case does not specifically address what the client fund did in reliance upon the audit opinions received from PriceWaterhouseCoopers, it most certainly was something more than "the ministerial act of filing" the opinion somewhere (Plaintiffs' Opp. Mem. at 11).

Additionally, the Court of Appeals' decision in *Ackerman* very clearly holds that receipt of the work product is the time when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court—regardless of whether the plaintiff is ignorant of the wrong or injury. Clearly, Ms. Ackerman's tax problems stemmed from the filing of her tax return, which as a matter of necessity had to have followed the presentation of the tax returns to her for signature by some period of time, even if it was very brief. Nevertheless, the Court of Appeals selected receipt as the time of accrual to make the measurement of the statute of limitations more predictable. To accept plaintiffs' proposition that accrual must be measured from some point after delivery would introduce exactly the same type of uncertainty that the Court of Appeals so strenuously sought to avoid in *Ackerman*. Accordingly, since plaintiffs *could have* relied upon Moss Adams' report upon receipt, it is irrelevant that they may not have taken action in reliance upon the report until some later time. The cases cited by plaintiffs in opposition to Moss Adams' motion confirm this conclusion.

Years before *Ackerman* was decided, the Appellate Division, Second Department ruled in *Fleet Factors Corp. v. Werblin* (114 A.D.2d 996, 495 N.Y.S.2d 434 (2d Dep't 1985)) (a case relied upon by plaintiffs) that a negligence claim by a lender against an accountant for providing inaccurate financial information concerning the borrower upon which the lender relied accrues upon the lender's receipt of the work product.

> The Statute of Limitations for professional malpractice is three
> years, and in those cases where the plaintiff is the client of the

4

professional the cause of action accrues upon the performance of the work by the professional. However, where, as here, the action is brought by a third party who was not the client, the action is not, strictly speaking, one for malpractice, but is one for simple negligence, and the statute begins to run, in such a case from the date of the injury…[Where] defendant accountants knew that their reports would be used by plaintiff lender…*the Statute of Limitations began to run from the date that plaintiff received the report, as that was the first date plaintiff **could have relied** upon the report to its detriment. In other words, the injury occurred when plaintiff received the inaccurate or negligently prepared report; the fact that the injury was not perceived until a later time is irrelevant.*

*Fleet,* 114 A.D.2d at 997 (emphasis added).   The Second Department determined that the lender's claim accrued upon receipt of the work product even though the initial report from the defendant accountants was prepared and issued on October 15, 1974, and the lending by the plaintiff did not commence until over a year later in November 1975.

*Cohen v. Abrahams*, 751 F. Supp. 472 (1990 U.S. Dist. LEXIS 16155) (S.D.N.Y. 1990) (another case cited by plaintiffs), adheres to the same rationale as *Fleet*:

In New York, the statute of limitations for an action against an accountant based upon statements the accountant made regarding the financial condition of an entity to whom a loan has been made is *three years from the date that the plaintiff received the financial statements.*

*Cohen*, 751 F. Supp. at 473.   In *Cohen*, the plaintiffs continued extending loans in purported reliance upon financial statements compiled by the defendant accountant until November 13, 1982, even though the last financial statement compiled by the defendant accountant was dated several months earlier.

Plaintiffs also cite *Bastys v. Rothschild* (No. 97 Cov. 5154, 200 U.S.Dist. LEXIS 17944, *149-150 (S.D.N.Y. Nov 21, 2000)), and *Chemical Bank v. Sternbach & Co.*, 91 A.D.2d 518, 456 N.Y.S.2d 392 (1st Dep't 1982), to support their argument that the statute of limitations did

2978402.1

not start to run on the date that they received Moss Adams' report, but, instead, at a later date when their loan to The Songwriters Collective closed. Unfortunately for plaintiffs, however, neither of these cases supports that proposition. In *Bastys*, the court based its analysis on the rule of law that accrual in a malpractice case against an accountant is measured from receipt of the work product.[4] No other measurement or accrual date is suggested in the court's opinion. In *Chemical Bank v. Sternbach & Co.*, the court noted that an accounting malpractice claim expires three years from "the date of the alleged malpractice," which is then tied to the presentation of the accountant's work product to the plaintiff despite the fact that this case was decided 12 years before *Ackerman*. Plaintiff's reliance on *IFD Contr. Corp. v. Corddry Carpenter Dietz and Zack*, 253 A.D.2d 89, 685 N.Y.S2d 670 (1st Dep't 1999), which does not even concern accounting malpractice, is simply misplaced.

Applying the holdings set forth in the cases cited by plaintiffs leads to the inescapable conclusion that the plaintiffs' claims, if any, against Moss Adams accrued on February 17, 2004, and thus already were time-barred when the parties entered into a tolling agreement on February 28, 2007. Plaintiffs concede that they received Moss Adams' work product by facsimile on February 17, 2004. Similar to the plaintiffs in *Fleet Factors* and *Cohen*, plaintiffs *could have* relied upon the Moss Adams report at that time after receipt and it is irrelevant that the plaintiffs may not have actually taken action in purported reliance upon the report until some later time. Thus, all of the facts necessary to the cause of action had occurred and plaintiffs could have obtained relief in court at that time—regardless of whether the plaintiffs knew of the wrong or injury, or closed the loan for that matter.

---

[4] Plaintiffs argue that the *Bastys* court made a "finding" that accrual was measured from the date of the transaction, rather than the receipt of the work product. However, plaintiffs' assertion appears to be based on the court's recitation of the allegations because there is no finding in the decision in line with plaintiffs' assertion.

2978402.1

## CONCLUSION

In sum, plaintiffs confuse the difference between when they *could have* relied upon the Moss Adams' report and when they *actually relied* upon it. The case law, however, is clear that in an accounting malpractice action, the injury occurs when the work product is received because that is the earliest time plaintiffs *could have* relied upon that work product. This rule applies to clients and non-clients alike, and to engagements involving tax returns, audits and any other type of professional service provided by an accountant. To change this rule as advocated by plaintiffs would have the nonsensical effect of affording non-clients greater rights to sue accountants than the accountants' own clients would have, and would unleash the "utter lack of predictability" New York has strenuously sought to avoid in this area. Accordingly, Moss Adams respectfully submits that it should be granted judgment on the pleadings dismissing Plaintiffs' Amended Complaint.

Dated:    New York, New York
          October 16, 2007

                                        Respectfully submitted,

                        WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                        By:
                                        Thomas R. Manisero [TM-8548]
                                        Peter J. Larkin [PL-9645]
                                        Jill F. Spielberg [JS-1721]
                                        *Attorneys for Defendant*
                                        *Moss Adams LLP*
                                        150 East 42nd Street
                                        New York, New York 10017-5639
                                        (212) 490-3000

7

2978402.1