Dorothy M. Weber, Esq. (DW 4734)
SHUKAT ARROW HAFER WEBER & HERBSMAN LLP
111 West 57th Street, Suite 1120
New York, NY 10019
(212) 245-4580
Attorneys for Defendants Wayne C. Coleman and
The Royalty Compliance Organization

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FORTRESS CREDIT OPPORTUNITIES I, LP and FORTRESS CREDIT OPPORTUNITIES II, LP,   )<br>)<br>)<br>)<br>Plaintiffs,   )<br>)<br>v.   )<br>)<br>WAYNE C. COLEMAN, THE ROYALTY )<br>COMPLIANCE ORGANIZATION and )<br>MOSS ADAMS LLP,   )<br>)<br>Defendants.   )<br>)<br>)<br>)<br>)<br>) | CASE NO. 07-CV-7369 (HB) |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' WAYNE C. COLEMAN and THE ROYALTY COMPLIANCE
ORGANIZATION'S MOTION TO DISMISS**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS.............................................................................. 2

    A.    The Loan – Plaintiffs' Alleged Reliance on RCO and Moss Adams.......... 3

    B.    The Claim Remains Time-Barred Notwithstanding A Tolling
        Agreement.............................................................................5

LEGAL ARGUMENT ................................................................................. 7

POINT I:  The Claim Is Time-Barred.............................................................. 8

    A.    The Statute of Limitations Had Already Run At the Time the Tolling
        Agreement Was Executed. ............................................................. 8

    B.    Choice of Law ........................................................................... 9

POINT II: The Amended Complaint Fails To Allege Facts Sufficient  To Pierce The
        Corporate Veil Of A Corporation................................................... 11

POINT III: Fortress Has failed to State A Cause Of Action Since They Do Not Allege
        Privity Of Contract With The RCO Defendants.......................................... 13

    A.    Plaintiff Does Not Properly or Sufficiently Allege Privity With The RCO
        Defendants ............................................................................ 14

POINT IV:  In The Alternative, The Court Should Stay This Action Pending The
        Outcome Of Any Related Or Pending Litigation And Proceedings And
        The Auction Required Under The Foreclosure................................14

    A.    Related Litigation .................................................................... 15

    B.    The Speculative Nature of Damages ....................................... 17

CONCLUSION ...................................................................................... 18

# TABLE OF AUTHORITIES

### CASES

Ackerman v. Price Waterhouse, 84 N.Y.2d 535, 541 (1994) ............................................. 8, 10

Ahmed v. Trupin, 809 F. Supp. 1100 (S.D.N.Y. 1993) ........................................... 13

Antone v. Gen. Motors Corp., 64 N.Y. 2d 20 (1984) ............................................. 10

Architectronics, Inc. v. Control Sys. Inc., 935 F. Supp. 425, 431 (S.D.N.Y. 1996) ............. 10

Cantor Fitzgerald Inc., 313 F.3d 704, 710 ............................................................. 10

Cooper v. Parsky, 95 Civ. 10543, 1997 WL 242534, at *23-24 (S.D.N.Y. Jan. 8, 1997) .. 7,12

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991) .............................. 7

Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) ................................................... 8

Guaranty Trust Co. v. York, 326 U.S. 99, 108-09 (1945) ........................................ 9

In re Allstate Ins. Co., (Stolarz), 81 N.Y.2d. 219, 223 (1993) ................................. 9

In re Alstom SA, 454 F.Supp.2d 187, 215 (S.D.N.Y. 2006) .................................... 12

In re Currency Conversion Fee Antitrust Litig., 265 F.Supp.2d 385, 416 (S.D.N.Y. 2003) ....................................................................................................... 12

Insurance Co. of North America v. ABB Power Generation, Inc., 925 F. Supp. 1053, 1059 (S.D.N.Y. 1996) .................................................................................. 10

Johns v. Town of East Hampton, 942 F. Supp. 99, 104 (E.D.N.Y. 1996) ............................ 7

Johnson v. The Songwriter Collective, LLC et al. 2005 WL 2483902 (M.D. Tenn.) ............ 2

Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941) ........................................ 9

Landis v. North Am. Co., 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed 153 (1936) ............ 15

Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) ........................................................... 7

Martin v. Julius Dierck Equip. Co., 43 N.Y. 2d 583 (1977) .................................... 10

McCarthy v. Sturm Ruger & Co., Inc., 916 F. Supp. 366, 368 (S.D.N.Y. 1996) ................. 13

Nederlands Erts-Tankersmaatschappil, N.V. v. Isbrandtsen Co., Inc., 339 F.2d 440, 441 (2d Cir. 1964) ............................................................................................... 15

Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996)............................................................................................................. 7

Novak v. Scarborough Alliance Corp., 481 F.Supp.2d 289, 293 (S.D.N.Y. 2007) ............... 11

Ossining Union Free School Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417 (1989) ................................................................................................................. 14

Pauleman v. Tobin, 30 F.3d 307-308-09 (2d Cir. 1994)................................................ 7

Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992) .................................................................................................. 13

Sea Spray Holdings. Ltd. v. Pali Finacial Group, Inc., 269 F.Supp.2d 356, 364 (S.D.N.Y. 2003) ................................................................................................. 15

Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co. 79 N.Y.2d 695, 708... 14

Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991) ............................... 15

Sosnow v. Paul, 43 A.D.2d 978, 352 N.Y.S.2d 502 (2d Dep't 1974) ...................... 8

Stafford v. International Harvester Co., 668 F.2d 142, 147 (2d Cir. 1981) ........................ 10

Strauss v. Belle Realty Co., 65 N.Y.2d 399, 402 (1985) ......................................... 13

Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998)........................................... 10

Tesoriero v. MetLife, 6 Misc.3d 1005(A), 800 N.Y.S.2d 357 (Table), 2004 WL 3086862 (N.Y. Sup. 2004) ............................................................................................. 8

Video Corporation of America v. Frederick Flalto Associations, Inc., 85 A.D.2d 448, 453 (1st Dep't 1982)................................................................................................. 8

Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006) ................................... 9

Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001)........................................... 7

Williamson v. PricewaterhouseCoopers LLP, 9 N.Y.3d 1, 4-5 (2007) ........................... 8, 10

Zurich Ins. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309 (1994).................................. 9

<u>STATUTES</u>

28 U.S.C. § 1332(c)(1) ................................................................................................ 11

<u>RULES</u>

C.P.L.R. 214(6) ........................................................................................................ 8,10
C.P.L.R. 202 .......................................................................................................... 10, 11
Fed.R.Civ.P. 10(c) ...................................................................................................... 7
Fed.R.Civ.P. 12(b)(6) ............................................................................................... 1,7

<u>TREATISES</u>

5 Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil 2d</u> § 1327,
at 762-63 (2d ed. 1990) ........................................................................................ 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FORTRESS CREDIT OPPORTUNITIES I, LP and FORTRESS CREDIT OPPORTUNITIES II, LP,<br><br>               Plaintiffs,<br><br>       v.<br><br>WAYNE C. COLEMAN, THE ROYALTY COMPLIANCE ORGANIZATION and MOSS ADAMS LLP,<br><br>               Defendants. | )<br>)<br>)CASE NO. 07-CV-7369 (HB)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' WAYNE C. COLEMAN and THE ROYALTY COMPLIANCE ORGANIZATION'S MOTION TO DISMISS

Defendants Wayne C. Coleman and the Royalty Compliance Organization[1] (the "RCO Defendants") move to dismiss the Amended Complaint asserted herein against the RCO Defendants (Count I) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## PRELIMINARY STATEMENT

This action for "professional negligence" must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because:

---

[1] If this action proceeds, the proper defendant is Financial Services Team, Inc. ("Financial"), a Missouri corporation. The Royalty Compliance Organization is a d/b/a of Financial Services Team, Inc., a Missouri corporation. See Declaration of Wayne C. Coleman dated November 8, 2007 ("Coleman Decl.") ¶1. For the purposes of this motion, however, Defendants use "RCO" since that is the name identified in the caption.

[2] A copy of the Amended Complaint is annexed as Exhibit A to the accompanying Declaration of Dorothy M. Weber dated November 8, 2007 ("Weber Decl."). Count II, asserted solely against Co-Defendant Moss Adams LLP, is the subject of a separate, pending motion to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (the "Companion Motion") which was fully briefed as of October 16, 2007. The exhibits attached to the Companion Motion are incorporated by reference herein.

1. the claim is dispositively time-barred on its face by the applicable statute of limitations;

2. neither RCO Defendant was retained by either Plaintiff Fortress Credit Opportunities I, LP ("Fortress I") or Fortress Credit Opportunities II, LP ("Fortress II") (collectively hereinafter referred to as "Fortress"), nor did either RCO Defendant perform any professional services for Fortress; and

3. the Amended Complaint fails to state a cause of action against Wayne C. Coleman as an individual.

Even were the claim not time-barred, the Amended Complaint fails to allege a basis for privity between the Plaintiffs and the RCO Defendants – much less a relationship from which any duty to the Plaintiffs could be construed.[3]

In the alternative to dismissal, the RCO Defendants seek a stay of this action pending the resolution of various litigations regarding the underlying loan transaction as set forth hereinbelow. Weber Decl. Ex. G.

## STATEMENT OF FACTS

For the purpose of this motion, the facts as alleged in the Amended Complaint are accepted as true and all statements are as set forth in the Amended Complaint.

Plaintiffs are Delaware limited partnerships having principal places of business in New York City. Amended Complaint ¶ 5. Plaintiffs form part of a multi-billion dollar conglomerate, Fortress Investment Group, which is self-described as "a leading global alternative asset manager with approximately $43.3 billion in assets under management

---

[3] Plaintiff states by judicial admission that its "only contractual relationship under the Fortress Loan Agreement and related agreements is with [TSC]." See true and accurate copy of the Memorandum of Law in Support of the Motion to Dismiss of Defendant Fortress Credit Opportunities I, LP dated July 1, 2005, Johnson v. The Songwriter Collective, LLC et al. 2005 WL 2483902 (M.D. Tenn.). Weber Decl. Ex. D.

as of June 30, 2007" – Plaintiffs are highly sophisticated lenders.[4] Plaintiffs' business, among other things, is to provide commercial financing. Plaintiffs note that a substantial part of the events allegedly giving rise to this lawsuit occurred in New York City. Amended Complaint ¶10.

The Royalty Compliance Organization is headquartered in Missouri and Wayne C. Coleman is a resident of Missouri. Amended Complaint ¶¶ 6 and 7.

## A.  The Loan – Plaintiffs' Alleged Reliance on RCO and Moss Adams

On or about March 1, 2004, Fortress closed on a loan agreement with a music publishing company called The Songwriter Collective ("TSC"), which set forth the terms of a $12.12 Million Dollar bridge loan (the "Loan"), the principal on which was to become due on March 1, 2005. Amended Complaint ¶¶ 1, 3, and 53.

The Loan was collateralized by a catalog of musical copyrights which Plaintiffs allege was the property of TSC (the "Collateral"). Amended Complaint ¶1.[5] As a condition to making the Loan, TSC was "required to provide Fortress with an appraisal of the valuation of the Collateral." Amended Complaint ¶2. TSC retained Defendant RCO to provide "a valuation of the catalogue assets of TSC." Amended Complaint ¶39. Defendant RCO produced its report (the "RCO Report") "pursuant to the terms of its engagement" with TSC. Amended Complaint ¶40.[6]

---

[4] Plaintiffs publish a website at www.fortressinv.com which contains information on its business, including its SEC filings and other public records.
[5] As discussed more fully hereinbelow (See Point V *infra*), while the Amended Complaint is silent as to any legal due diligence performed by Plaintiffs independently in connection with the issue of ownership of those underlying copyrights comprising the Collateral, it is that very issue which has emerged as the basis for a least four (4) separate 2005 lawsuits brought by songwriters whose titles are listed among those comprising that Collateral, and which have named Fortress as a defendant for claims which include, *inter alia*, fraud. Weber Decl. Ex.G.

While the Amended Complaint does not allege the date that the RCO Report was provided to the Plaintiffs, the original Complaint acknowledges that it received the RCO Report on or about January 30, 2004. Complaint ¶38. The Amended Complaint admits that the RCO Report "contained data that RCO had obtained from Moss Adams." It also asserted that RCO provided Fortress with an "updated valuation of the Collateral as of February 25, 2004." Amended Complaint ¶40.

The Moss Adams Report, which Fortress acknowledges receiving on February 17, 2004 (Amended Complaint ¶17) was very clear that it contained estimations which were "speculative." Weber Decl. Ex. B (*See* Declaration of Thomas R. Manisero dated September 18, 2007 in Support of Defendant Moss Adams LLP's Motion for Judgment Exhibit D thereto).

The RCO Report, which Plaintiffs acknowledge was based on the information contained in the Moss Adams Report (Amended Complaint ¶¶16 and 43) likewise contained clear and unequivocal disclaimers:

> **We make no representation either express or implied that the underlying assumptions or the projections themselves now reflect or will reflect in the future actual results as presented herein.**
> * * * * * * *
> **The procedural work undertaken does not encompass copyright title search or other procedures associated with legal due diligence.**

See Declaration of Wayne C. Coleman dated November 8, 2007 ("Coleman Decl.") ¶¶4 and 6.

The Amended Complaint alleges that shortly after the Loan closed on March 1, 2004, "TSC breached its obligations and the Loan entered into default." Amended Complaint ¶3.

4

**B.    The Claim Remains Time-Barred**
**Notwithstanding A Tolling Agreement**

The facts alleged asserting a claim for professional negligence in the Amended

Complaint set forth a chronology of events which show that the claim is time-barred:

- Plaintiffs received a copy of the RCO Report "on or about January 30, 2004" Complaint ¶38.

- Plaintiffs received another copy of the RCO Report on a date between February 17, 2004 and February 25, 2004. Amended Complaint ¶40.

- Plaintiff and RCO Defendants executed a tolling agreement on February 27, 2007 – which is over the three years after first receiving the RCO Report. Coleman Decl. ¶9.

Plaintiff and the RCO Defendants entered into a tolling agreement on February

28, 2007 (Coleman Decl. Exhibit A) whereby the parties agreed to toll the running of the

statute of limitations on any claims the parties might have had against one another

through August 22, 2007.  Although the letter is dated February 22, 2007, it was not

executed until February 27, 2007 by Coleman and not fully executed until February 28,

2007. Coleman Decl. ¶ 9.[7]

Plaintiffs allege that the RCO Defendants and the Co-Defendant were negligent

(Amended Complaint at ¶¶59-66, *passim)* and that Plaintiffs first became aware of the

purported negligence in May of 2005. Amended Complaint ¶¶57-58.  Plaintiffs now assert

in their Opposition to the Companion Motion: that the operative date for statute of

---

[7] A similar tolling agreement is also implicated in the Companion Motion.

limitations purposes is March 1, 2004, the date of the closing. Weber Decl. Ex. C (Declaration of Michael Harwood).

As demonstrated below, the statute of limitations applicable to the claim asserted against the RCO Defendants expired as early as January 30, 2007 and, at the latest, on February 25, 2007.

## LEGAL ARGUMENT

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the claimant, drawing all reasonable inferences in its favor. Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001); Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). In deciding a motion to dismiss, the Court may consider the facts alleged in the complaint, *see* Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996), and in documents attached as exhibits or incorporated by reference. *See* Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998); Pauleman v. Tobin, 30 F.3d 307, 308-309 (2d Cir. 1994); *See also* Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991), *cert. denied*, 503 U.S. 960 (1992). ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference")(*citing* Fed.R.Civ.P. 10(c)). Though Plaintiffs do not attach the agreements to which it refers in its Amended Complaint, the references to these agreements are explicit, and therefore those documents may be considered in this motion. *See, e.g.*, Johns v. Town of East Hampton, 942 F. Supp. 99, 104 (E.D.N.Y. 1996)("It is well established that when a 'plaintiff fails to introduce a pertinent document as part of his pleading, a defendant may introduce that exhibit as part of his motion attacking the pleading'")(*quoting* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1327, at 762-63 (2d ed. 1990).

## POINT I

### THE CLAIM IS TIME-BARRED

**A.    The Statute of Limitations Had Already Run**
**At the Time the Tolling Agreement Was Executed.**

Since Plaintiffs have brought this action in this Court on the basis of diversity

jurisdiction, the Court is required to apply the substantive law of the state in which it

sits: New York. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Claims of professional

negligence in New York are governed by a three-year statute of limitations period.

C.P.L.R. 214(6).  *See* Ackerman v. Price-Waterhouse, 84 N.Y.2d 535, 541 (1994); *see also*

Williamson v. PriceWaterhouseCoopers LLP, 9 N.Y.3d 1, 4-5 (2007). A cause of action for

professional negligence accrues upon the rendering of the professional services. *See, e.g.*

Tesoriero v. MetLife, 6 Misc.3d 1005(A), 800 N.Y.S.2d 357 (Table), 2004 WL 3086862

(N.Y. Sup. 2004); Video Corporation of America v. Frederick Flalto Associations, Inc., 85

A.D.2d 448, 453 (1st Dep't 1982); Sosnow v. Paul, 43 A.D.2d 978, 352 N.Y.S.2d 502 (2d

Dep't 1974)("The rule in cases where the gravaman of the suit is professional malpractice

is now and has always been that the cause of action accrues upon the performance of the

work by the professional.").

Accordingly, any claims Plaintiff could assert against the RCO Defendants accrued

upon Plaintiff's receipt of the RCO Report which Plaintiffs admit, on the face of their

Amended Complaint, was received on a date between January 30, 2004 and February 25,

2004. Amended Complaint ¶40.[8] Since the three-year statute of limitations would have expired on February 25, 2007 <u>at the latest.</u>

The Court need look no further than the statute of limitations to dismiss this action against the RCO Defendants.

## B. <u>Choice of Law</u>

A federal court sitting in diversity applies the choice of law rules of the state in which it sits. <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496-97 (1941); <u>Wall v. CSX Transp., Inc.</u>, 471 F.3d 410, 415 (2d Cir. 2006). Thus, where jurisdiction is based on diversity, a federal court sitting in New York must apply New York's choice of law rules. *See* <u>Guaranty Trust Co. v. York</u>, 326 U.S. 99, 108-09 (1945).

The New York Court of Appeals has stated that "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." <u>In re Allstate Ins. Co., (Stolarz)</u>, 81 N.Y.2d 219, 223 (1993); *see also* <u>Zurich Ins. v. Shearson Lehman Hutton, Inc.</u>, 84 N.Y.2d 309 (1994). In our case, a conflict exists between the statute of limitations applicable in New York and the statute of limitations applicable in California on a claim of professional negligence. As set forth above (Point I, *supra*), New York's statute of limitations applicable to the professional negligence claim asserted by Plaintiffs against the RCO Defendants is three (3) years measured from when the work product was

---

[8] The Amended Complaint clearly admits that the RCO Report consisted of a valuation of TSC's music catalogue "as of January 30, 2004," contained data from Co-Defendant's report dated February 17, 2004, and was, thereafter, "updated" with information "as of February 25, 2004." Amended Complaint ¶ 40. Accordingly, as alleged in the Amended Complaint, the original RCO Report was issued at some point between February 17, 2004 and February 25, 2004. The original Complaint admits that Plaintiffs had a copy of the RCO Report as early as January 30, 2004. Complaint ¶38.

delivered. *See* <u>Ackerman v. Price Waterhouse</u>, 84 N.Y.2d 535, 541 (1994); *see also* CPLR 214(6); <u>Williamson v. PricewaterhouseCoopers LLP</u>, 9 N.Y.3d 1, 4-5 (2007).

New York courts have traditionally characterized statutes of limitation as part of New York's procedural law. <u>Architectronics, Inc. v. Control Sys. Inc.</u>, 935 F. Supp. 425, 431 (S.D.N.Y. 1996); <u>Insurance Co. of North America v. ABB Power Generation, Inc.</u>, 925 F. Supp. 1053, 1059 (S.D.N.Y. 1996); <u>Martin v. Julius Dierck Equip. Co.</u>, 43 N.Y. 2d 583 (1977). Accordingly, New York courts generally apply New York's statutes of limitations when presented with a choice of law – even when the injury giving rise to the action occurred outside New York. *See* <u>Stafford v. International Harvester Co.</u>, 668 F.2d 142, 147 (2d Cir. 1981).

Pursuant to New York's "borrowing" statute, the statute of limitations of the foreign jurisdiction may, under certain circumstances be "borrowed" if the application of such will result in the cause of action being barred. <u>Martin v. Julius Dierck Equip. Co.</u>, 43 N.Y. 2d 583 (1977).

Under New York's borrowing statute, Courts must apply the shorter statute of limitations period, taking into account all applicable tolling provisions, provided by either New York or the state where the cause of action accrued. CPLR 202; <u>Cantor Fitzgerald Inc.</u>, 313 F.3d 704, 710 (*citing* <u>Stuart v. Am. Cyanamid Co.</u>, 158 F.3d 622, 627 (2d Cir. 1998), *cert. denied* 526 U.S. 1065, 119 S.Ct. 1456 (1999); <u>Antone v. Gen. Motors Corp.</u>, 64 N.Y. 2d 20 (1984)). New York's borrowing statute states:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

CPLR 202.

Since Plaintiffs' principal place of business is in New York, Plaintiffs are New York residents (28 U.S.C. § 1332( c )(1)), so the borrowing statute mandates that the law of New York must be applied to determine whether Plaintiffs' claims are timely.  However, even if Plaintiffs' New York residence is ignored, Plaintiffs' malpractice claim still must have been timely in both New York and California when this action was commenced to survive the borrowing statute.  As we addressed in Point I, Plaintiffs' claim is not timely in New York and, therefore, it must be dismissed regardless of whether it might be timely elsewhere.

## POINT II

## THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO PIERCE THE CORPORATE VEIL OF A CORPORATION

Wayne C. Coleman as an individual is not a properly named party herein. The elements needed to be established for the Court to impose veil piercing are "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury ..." Novak v. Scarborough Alliance Corp., 481 F.Supp.2d 289, 293 (S.D.N.Y. 2007) (citation and quotation omitted).

Factors to be considered in the determination of control or domination sufficient to pierce the veil include: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence ... (2) inadequate capitalization, ... (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and

telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, [and] (7) whether the related corporations deal with the dominated corporation at arms length ..." In re Alstom SA, 454 F.Supp.2d 187, 215 (S.D.N.Y. 2006) (citations omitted).

The Plaintiffs' Amended Complaint does not include any allegation sufficient to pierce the corporate veil of RCO, nor are any facts alleged that would lead this Court to believe that Plaintiff is seeking to pierce the corporate veil. The Amended Complaint neither addresses an element of the *prima facie* case for piercing the corporate veil nor any of the factors to set forth domination.

Even if assumed to be true, these facts are not pled sufficiently to consider Mr. Coleman and RCO the same entity for the purposes of a motion to dismiss. *See* In re Currency Conversion Fee Antitrust Litig., 265 F.Supp.2d 385, 416 (S.D.N.Y. 2003) ("[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."). *See also* Cooper v. Parsky, 95 Civ. 10543, 1997 WL 242534, at *23-24 (S.D.N.Y. Jan. 8, 1997) (motion to dismiss piercing the corporate veil claim granted because plaintiff's complaint failed to allege at least two of the elements to prove a veil piercing claim), *vacated on other grounds*, 140 F.3d 433 (2d Cir.1998).[9]

---

[9] Indeed, it is notable that neither Lewis J. Stark nor any of the partners of co-defendant Moss Adams LLP were named individually in this lawsuit.

## POINT III

## FORTRESS HAS FAILED TO STATE A CAUSE OF ACTION SINCE THEY DO NOT ALLEGE PRIVITY OF CONTRACT WITH THE RCO DEFENDANTS

The predicate for a claim in negligence is the running of a duty from the defendant to the plaintiff. Privity between parties is required.

In New York, only where the court concludes that a duty exists will it be necessary to reach the question of breach. McCarthy v. Sturm Ruger & Co., Inc., 916 F. Supp. 366, 368 (S.D.N.Y. 1996), aff'd 119 F.3d 148 (2d Cir. 1997). Foreseeability of an injury does not determine the existence of a duty. Strauss v. Belle Realty Co., 65 N.Y.2d 399, 402 (1985).

A professional owes no duty to a non-client unless special circumstances require otherwise. Ahmed v. Trupin, 809 F. Supp. 1100 (S.D.N.Y. 1993). Professional negligence, very simply, requires a professional duty. Since Fortress was neither in privity of contract with RCO, nor in a relationship close enough to substitute for privity with the RCO Defendants, they do not have standing to bring a claim of professional negligence.

The New York Court of Appeals has stated the governing rule as follows: "[B]efore a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity." Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992). No such allegations have been made in the Complaint.

### A.   Plaintiff Does Not Properly or Sufficiently Allege Privity With the RCO Defendants.

Citing to the Court of Appeals' observation in <u>Ossining Union Free School Dist. v. Anderson LaRocca Anderson</u>, 73 N.Y.2d 417 (1989) that the duty to nonprivies is defined "narrowly," the court held that the mere foreseeability of the plaintiff's use of the audit opinion, even buttressed by a direct contact with the plaintiff during the audit, could not support a claim of negligent misrepresentation. <u>Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co.</u> 79 N.Y.2d 695,708 (1992).

Here, Plaintiffs acknowledge that:

- TSC consulted with [the RCO Defendants] to provide a valuation. Amended Complaint ¶2.

- TSC retained the services of the RCO Defendants. Amended Complaint ¶14

- TSC provided a final copy of the RCO Report to [Plaintiffs]. Amended Complaint ¶41.

### POINT IV

### IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION PENDING THE OUTCOME OF ANY RELATED OR PENDING LITIGATION AND PROCEEDINGS AND THE AUCTION REQUIRED UNDER THE FORECLOSURE

At a minimum, this action should be stayed pending a determination of various pending litigations and a resolution of the foreclosure and auction of the Collateral herein, without which Fortress cannot make a claim for damages against any of the named defendants.

The Court may stay this litigation pursuant to its inherent authority to effectively manage its docket. *See, e.g.*, <u>Landis v. North Am. Co.</u>, 299 U.S. 248, 254-55, 57 S.Ct. 163,

81 L.Ed 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."); <u>Sierra Rutile Ltd. v. Katz</u>, 937 F.2d 743, 750 (2d Cir. 1991) ("[W]e have recognized that the district courts have 'inherent power' to grant stays in certain circumstances."); <u>Nederlands Erts-Tankersmaatschappil, N.V. v. Isbrandtsen Co., Inc.</u>, 339 F.2d 440, 441 (2d Cir. 1964) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (citations omitted)); <u>Sea Spray Holdings. Ltd. v. Pali Finacial Group, Inc.</u>, 269 F.Supp.2d 356, 364 (S.D.N.Y. 2003).

A.    **<u>Related Litigation</u>**[10]

It is clear from prior related litigation in which Fortress has been named as defendant by various former TSC songwriters, that the Amended Complaint herein provides a very limited, incomplete account of the underlying Loan transaction and ultimate default by TSC.  Fortress' representations that its "reasonable" reliance on reports relating to the valuation of the Collateral does not address the substance of the songwriters' claims: that their songs were obtained by TSC through fraud. If that is true,

---

[10] Exhibit G to the Declaration of the Dorothy M. Weber is comprised of a list of such actions brought by these songwriters which name Fortress as a defendant. It should be noted that while the RCO Defendants are unaware of the present status of these cases, there may be more that are presently not known to the defendants.

then the issue of failure of the Loan is one of failure of legal due diligence because the collateral was not owned or controlled by TSC – not because it was overvalued.

Moreover, those pending litigations allege that TSC failed to properly manage and market the catalogue, resulting in a sharp decline in the catalog's value. (See Weber Decl. Ex. H  Decision/Order p. 1)

In addition, Annie Roboff, one of the songwriters whose titles were among those comprising the valuation of the original Collateral of the Loan, brought an action against Fortress and TSC alleging, *inter alia*, that she had been fraudulently induced into transferring title to a number of her songs to TSC.  Roboff prevailed on her motion for a preliminary injunction, and was entitled to secure the return of title to her songs. Weber Decl. Ex. E (Decision/Order of Judge Kapnick dated July 19, 2005).

As of June of 2006, at least four (4) other actions brought by other former TSC songwriters who raised claims "duplicative" of Roboff's were pending in Tennessee. Weber Decl. Ex. F (Order/Decision of Judge Kapnick dated May 31, 2006 in which the case was transferred to Tennessee on the grounds of *forum non conveniens* and the fact that the matter was duplicative of claims asserted in various other cases in Tennessee).

The nature of the prior pending litigations evinces that it was not the <u>value</u> of the Collateral, but the fact that TSC did not have <u>title</u> to that Collateral in the first place, which caused the collapse of this transaction.

In the event the Amended Complaint is not dismissed against the RCO Defendants, counterclaims and third-party claims will necessarily be asserted against various other professionals on whom Fortress relied including, but not limited to Pryor Cashman and Baker McKenzie on the basis of the contributory negligence of any and all

third parties involved in the transactions relating to the Loan. Weber Ex. C (Schedule IV).[11]

The Amended Complaint admits that the RCO Defendants were hired to "provide TSC with a valuation of the catalogue of assets of TSC." Amended Complaint ¶39. Indeed, Mr. Coleman has also verified that whatever services were performed by RCO related to valuation, and not legal title to, the catalog of songs. Coleman Decl. ¶6.

## B.    The Speculative Nature of Damages

Unless and until the Plaintiffs herein have completed any and all actions in connection with the foreclosure of the loan (including the auction of the Collateral) against the Songwriters Collective, the amount of – much less the existence of – damages is entirely speculative.

Simply, there can be no basis for a claim of a shortfall unless and until Plaintiffs have either auctioned or otherwise liquidated the Collateral and suffered a loss.

---

[11] It appears from the closing documents that other third parties were part of the legal due diligence team including, but not limited to Prager & Fenton.

## CONCLUSION

For the foregoing reasons, the RCO Defendants respectfully request that the Court grant their motion in its entirety and that the Amended Complaint be dismissed in its entirety or, in the alternative, that the action be stayed.

Dated:       November 9, 2007
             New York, New York

Respectfully submitted,

SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.

By: _____
    Dorothy M. Weber (DW 4734)
    Attorneys for Defendants
    111 West 57th Street, Suite 1120
    New York, New York 10019
    (212) 245-4580

To:    Michael C. Harwood (MH-4227)
       Kasowitz, Benson, Torres & Friedman LLP
       Attorneys for Plaintiffs
       1633 Broadway
       New York, New York 10019
       (212)506-1709


To:    Thomas R. Manisero [TM-8548]
       Wilson, Elser, Moskowitz, Edelman, & Dicker LLP
       Attorney for Defendant Moss Adams LLP
       150 East 42nd Street
       New York, New York 10017-5639
       (212) 490-3000