Westlaw.

2005 WL 2483902 (M.D.Tenn.)                                                    Page 1
**(Cite as: 2005 WL 2483902)**

For Opinion See 2006 WL 2524094, Fed. Sec. L. Rep. P 93,844

United States District Court, M.D. Tennessee.
Tim JOHNSON, Plaintiff,
v.
THE SONGWRITER COLLECTIVE, LLC, E. Jean Mason, Bud Carr, Chuck McNeal, Robert
D'Loren, and Fortress Credit Opportunities I, LP, Defendants.
Civil Action No. 3:05-0320.
July 1, 2005.

Memorandum of Law in Support of the Motion to Dismiss of Defendant Fortress Credit
Opportunities I, LP

Judge Trauger.
Magistrate Judge Griffin.

*TABLE OF CONTENTS*

TABLE OF CONTENTS ... i

TABLE OF AUTHORITIES, ... ii

PRELIMINARY STATEMENT ... 1

STATEMENT OF FACTS ... 2

ARGUMENT ... 7

I COUNT I SEEKING DECLARATORY RELIEF AGAINST FORTRESS MUST BE DISMISSED FOR FAILURE
TO STATE A CLAIM ... 7

 A. The LLC Agreement Is Voidable, Not Void ... 8

 B. The LLC Agreement Cannot Be Voided Because Fortress, As An Intervening Third-
Party, Possesses An Enforceable Security Interest In Johnson's Catalog ... 8

 C. Johnson's Claim for Declaratory Relief Also Fails As a Matter of Law Because
Fortress Is a Secured Party Under Article 9 of Tennessee's Uniform Commercial Code
... 9

II. COUNT V FOR RESCISSION AND REFORMATION MUST BE DISMISSED AGAINST FORTRESS TO
THE EXTENT THAT SUCH RESCISSION OR REFORMATION WOULD IMPACT FORTRESS'S SECURITY

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2483902 (M.D.Tenn.)                                                                                    Page 2
**(Cite as: 2005 WL 2483902)**

INTEREST OR OTHER RIGHTS UNDER THE FORTRESS LOAN AGREEMENT ... 12

III. PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT VI) MUST BE DISMISSED FOR FAILURE
TO STATE A CLAIM AGAINST FORTRESS ... 15

  A. Johnson's Unjust Enrichment Claim Must Be Dismissed Because the Collective, Not
Johnson, Granted Fortress a Security Interest in Johnson's Catalog ... 15

  B. Johnson's Claim For Unjust Enrichment Must Be Dismissed Because Fortress Paid
$12 Million For Its Security Interest In the Catalogs Assigned To the Collective By
Its Members, Including Johnson's Catalog ... 16

CONCLUSION ... 17

*TABLE OF AUTHORITIES*

FEDERAL CASES

*Advocacy Org. for Patients & Providers v. Automobile Club Ins. Ass'n,* 176 F.3d 315
(6th Cir. 1999) ... 7

*Begala v. PNC Bank, Ohio, N.A.,* 214 F.3d 776 (6th Cir. 2000) ... 7

*In re Bell & Beckwith,* 112 B.R 858 (N.D. Ohio 1990) ... 8

*Black v. Boyd,* 248 F2d 156 (6th Cir. 1957) ... 15

*Chase Manhattan Bank v. CVE, Inc.,* 206 F Supp. 2d 900 (MD Tenn. 2002) ... 12, 13,
15

*In re: Coupon Clearing Svc., Inc.,* 113 F.3d 1091(9th Cir 1997) ... 10

*Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F2d 802 (6th Cir. 1988) ... 7

*In re Delorenzo,* 1980 Bankr. LEXIS 4193 (Bankr. M.D. Tenn. Oct 31, 1980) ... 8

*Kunkel v. Sprague Nat'l Bank,* 128 F. 3d 636 (8th Cir. 1997) ... 10

*Latimer v. Robinson,* 338 F Supp. 2d 841 (M.D. Tenn 2004) ... 2

*McFarland v. Ford Motor Credit Co.,* 112 B.R. 906 (Bankr. E.D Tenn 1990) ... 10

*In re Pubs, Inc. of Champaign,* 618 F.2d 432 (7th Cir. 1980) ... 10

*In re Vitamins Antitrust Litig.,* 2001 U.S. Dist LEXIS 9585 (D.C. 2001) ... 16

STATE CASES

*A. Landreth Co. v. Schevenel,* 102 Tenn, 486, 52 S.W 148 (Tenn. 1899) ... 13

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2483902 (M.D.Tenn.)                                              Page 3
**(Cite as: 2005 WL 2483902)**

*Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc.*, 160 S. W 3d 874 (Tenn. Ct. App 2004) ... 15

*Central Nat'l Bank of Mattoon v. Worden-Martin, Inc.*, 413 N.E.2d 539 (111. App. Ct. 1980) ... 10

*Freidus v. Sardelli*, 192 A.D.2d 578, 595 N.Y.S 2d 981 (2d Dep't 1993) ... 14

*Frymer v. Bell*, 99 A.D.2d 91, 472 N.Y.S.2d 622 (1st Dep't 1984) ... 14

*Grossman v. Herkimer County Indus. Dev. Agency*, 60 A D.2d 172, 400 N.Y.S.2d 623 (4th Dep't 1977) ... 14

*Indymac Mortg. Holdings, Inc. v. Kauffman*, 2001 Tenn. App. LEXIS 95 4 (Tenn Ct. App 2 00 1) ... 15

*Ingram v. Beazer Homes Corp.*, 2003 Tenn. App. LEXIS 239 (Tenn. Ct. App 2003) ... 14

*John J. Heirigs Constr. Co. v. Exide*, 709 S W. 2d 604 (Tenn. Ct. App. 1986) ... 16, 17

*Ledbetter v. Darwin Dobbs Co.*, 473 So 2d 197 (Ala.Civ.App, 1985) ... 10

*Leeper v. Cook*, 688 S. W. 2d 94 (Tenn. Ct. App. 1985) ... 15

*McGarry v. Miller*, 158 A.D.2d 327, 550 N.Y.S.2d 896 (1st Dep't 1990) ... 14

*Pasehall's, Inc. v. Dozier*, 219 Tenn 45, 407 S W.2d 150 (1966) ... 15, 16, 17

*Peterson v. First Tennessee Bank*, 1985 Tenn. App. LEXIS 3059 (Tenn. Ct. App. July 30, 1985) ... 10

*Richardson v. Vick*, 125 Tenn 532, 145 S.W. 174 (1911) ... 8

*Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 1, 280 N.E.2d 867 (N.Y. 1972) ... 13

*Sims v. Banks of Commerce & Trust Co.*, 14 Tenn. App. 672 (Ct. App 1932) ... 8

*Singh v. Carrington*, 2005 N.Y.App. Div LEXIS 5840 (2d Dep't, May 31, 2005) ... 13

*Whitehaven Comty. Baptist Church v. Holloway*, 973 S.W.2d 592 (Tenn 1998) ... 17

*Williams v. Spinks*, 7 Tenn App. 488, 1928 WL. 2041 (Ct App. 1928) ... 8

FEDERAL STATUTES

Fed. R Civ. P. 12(b)(6) ... 1, 7

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2483902 (M.D.Tenn.)                                                                     Page 4
(Cite as: 2005 WL 2483902)

STATE STATUTES

Tenn Code Ann § 47-9-203 ... 9, 10

MISCELLANEOUS

Restatement 2d of Contracts § 7 ... 8

Defendant Fortress Credit Opportunities I, LP, ("Fortress"), respectfully submits
this memorandum of law in support of its motion to dismiss all claims in Plaintiff
Tim Johnson's Complaint asserted against Fortress (Count I, Count V and Count
VI),[FN1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP")

    FN1. Counts II-IV and Counts VII-VIII are not alleged against Fortress and
    are therefore not addressed in this Motion to Dismiss.

*PRELIMINARY STATEMENT*

Tim Johnson ("Johnson" or "Plaintiff") seeks to reverse his decisions in December
of 2003 to join The Songwriter Collective, LLC (the "Collective") and to convey his
Catalog so that it could be used to secure a $12 million loan made by Fortress The
asserted factual basis for this relief is that the Collective and its agents -- not
Fortress -- made certain misrepresentations and were guilty of mismanagement. As
the allegations in the Complaint make clear: (1) Fortress had nothing to do with
any of the fraud, misrepresentations or mismanagement alleged by Johnson; (2)
Fortress's only connection to this dispute is a $12 million loan it provided to the
Collective to fund its operations; (3) Johnson assigned all right, title and
interest in his catalog -- the intellectual property rights to Johnson's musical
compositions, including all copyrights and associated royalty revenue income
streams ("Catalog") -- to the Collective with the knowledge that it would serve as
collateral for the $12 million loan from Fortress; and (4) as a bona fide
purchaser, Fortress's loan to the Collective was made in exchange for promised
repayment and a security interest in the Collective's intellectual property rights,
including Johnson's Catalog Despite these facts, Johnson now seeks to deprive
Fortress of its rights to that collateral. Whatever the merit of Johnson's claims
against the Collective and its agents, there is no legal or equitable basis for
invalidating the rights Fortress holds in the collateral provided in return for its
$12 million loan.

*STATEMENT OF FACTS*[FN2]

    FN2. On May 24, 2005, Johnson filed an amended complaint (the "Complaint")
    against Fortress and other defendants, alleging essentially the same claims
    set forth in the original complaint Johnson filed on April 21, 2005. Solely
    for the purposes of this motion, we accept as true the facts alleged in the
    Complaint.

Beginning in or about November or December of 2003, Johnson was solicited to
participate in the Collective, a Delaware limited liability company formed for the
purpose of operating a music publishing company owned by and run for the benefit of
its members Compl. at ¶ 11-12; Jarrett Aff., Ex. A at § 2.4.[FN3] Songwriters who
were interested in becoming members of the Collective were required to sign the

2005 WL 2483902 (M.D.Tenn.)                                                                        Page 5
(Cite as: 2005 WL 2483902)

Collective's Amended and Restated Limited Liability Company Agreement (the "LLC
Agreement") Compl. at ¶ 17; Jarrett Aff., Ex. A. Interested songwriters were also
required to enter into a subscription agreement with the Collective whereby they
agreed to assign, sell, transfer and convey their respective catalogs (the
intellectual property rights to a songwriter's compositions) to the Collective.
Compl. at ¶? 12-13, 16; Jarrett Aff., Ex. B at p. 8.

> FN3. The Court may consider the extrinsic documents attached to the Affidavit
> of Roderick Jarrett for the purposes of deciding this Motion to Dismiss
> because the documents' contents are alleged in the Plaintiff's Complaint
> and/or the documents attached to Fortress's Motion to Dismiss are referred to
> in Plaintiff's Complaint and are central to Plaintiff's claim *See Latimer v.
> Robinson,* 338 F Supp. 2d 841, 843 (M D. Tenn. 2004) (explaining the standard
> for allowing extrinsic documents to be considered on a motion to dismiss and
> granting motion to dismiss based upon documents attached to defendant's
> motion to dismiss that were outside the pleadings).

In connection with becoming a member of the Collective, Johnson executed a
subscription agreement with the Collective on December 12, 2003 (the "Subscription
Agreement"). Compl at¶16; Jarrett Aff., Ex. B. Pursuant to the Subscription
Agreement, Johnson transferred all right to, and interest in, his Catalog to the
Collective Johnson also executed the LLC Agreement, on or about December 12, 2003.
Compl at 1 17; Jarrett Aff., Ex. A.

Under the terms of the Subscription Agreement with the Collective, Johnson
specifically agreed to:
assign, sell, transfer and convey to the [Collective], all right, title and
interest [belonging to Johnson] ... in all of the Compositions... set forth on
Schedule A, including, without limitation, all titles, words and music thereof, any
and all copyrights (whether registered or unregistered), whether any of the
foregoing items is now or hereafter owned beneficially or of record and whether now
or hereafter owned individually, jointly or otherwise, and in connection with all
of the foregoing, all other applications and other pending items, all income,
accounts, license royalties, general intangibles and other payment intangibles, any
and all claims or causes of action whether asserted or not relating thereto, any
and all future income streams emanating therefrom, all proceeds of infringement
suits and other proceeds, all rights to sue for past, present and future
infringement, all rights corresponding thereto throughout the world, and any and
all reissues, divisions, continuations, renewals, extensions, derivative works and
other rights of copyright thereof, all in the [Collective's] and/or [Johnson's]
name (including without limitation, during the pendency of any bankruptcy-related
proceeding), together, in each case, with all products and proceeds thereof, all
collections, payments and other distributions and realizations with respect
thereto, any and all other rights, powers, privileges, remedies and interests of
[Johnson] therein, thereto or thereunder.

Jarrett Aff., Ex. B at § 1.3

Johnson's Catalog, which Johnson transferred to the Collective pursuant to the
terms of the Subscription Agreement, is set forth fully on Schedule A of the
Subscription Agreement. Schedule A, containing Johnson's notarized signature to the
copyright assignment, includes a single paragraph, in which Johnson specifically
acknowledged and agreed to:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2483902 (M.D.Tenn.)                                              Page 6
(Cite as: 2005 WL 2483902)


For good and valuable consideration, the receipt and sufficiency of which are
hereby acknowledged, the undersigned, [Johnson] does hereby assign, sell, transfer,
and convey to The Songwriter Collective, LLC, and its successors and assigns
("Assignee"), all rights now known, or which may hereinafter come into existence,
in each of the musical compositions (the "Compositions") set forth on Schedule A
hereto including, without limitation, the title, words and music, any and all
registered copyrights relating thereto or the full light to secure copyright
registrations therein to any unregistered Compositions, and all renewal and
extension rights of copyright thereof, worldwide, all in [Johnson's] name, any and
all claims or causes of action whether asserted or not relating thereto and any and
all current or future income streams emanating therefrom

Jarrett Aff., Ex. B at Schedule A

Under the terms of the Subscription Agreement, Johnson also agreed and acknowledged
that Johnson's Catalog would "be used as collateral by the [Collective] in order to
secure interim financing to cover its operations" Jarrett Aff., Ex B at p. 1;
Compl. at ¶ 16. On February 13, 2004, Johnson also executed an amendment to the LLC
Agreement (the "Amendment"), further agreeing to allow his Catalog to be pledged as
collateral for the Fortress Loan Agreement. Compl at ¶ 26,

On or about March 1, 2004, after obtaining the assignments of various catalogs from
its members, including Johnson, the Collective obtained a $12 million loan from
Fortress by executing the Fortress Loan Agreement. Compl at ¶ 27 The Fortress Loan
Agreement was collateralized "by Johnson's Catalog" (as well as in and over the
catalogs of other Collective members) Compl. at¶29 By signing the Amendment to the
LLC Agreement, Johnson acknowledged his awareness of the Fortress Loan Agreement
and pledged his Catalog as collateral to secure that loan Compl. at ¶ 26

The security interest Fortress obtained in Johnson's Catalog is set forth in the
Copyright Mortgage and Security Agreement, dated as of March 1, 2004 (the
"Copyright Mortgage") between Fortress and the Collective Jarrett Aff., Ex. C. The
Copyright Mortgage grants Fortress a copyright mortgage in the compositions
contributed to the Collective by each of its members and a security interest and
right to the royalties generated by those compositions. *Id.* Fortress's only
contractual relationship under the Fortress Loan Agreement and related agreements
is with the Collective. *See* Jarrett Aff, Exs. A-C.

In or about November 2004, after the Collective had defaulted under the terms of
the Fortress Loan Agreement, Fortress threatened to foreclose and to take
possession of Johnson's Catalog interest Compl at ¶ 33. Despite Johnson's knowledge
of Fortress's right and intention to foreclose on the Fortress Loan Agreement,
Johnson did not attempt to exercise his "Put Right" -- the right contained in the
LLC Agreement whereby Johnson, within one year of the execution of the LLC
Agreement, could pay certain amounts in order to receive a reconveyance of his
Catalog -- and Johnson never informed the Collective or Fortress that he intended
to exercise his Put Right *See generally* Compl. Moreover, pursuant to Section 11 2
of the LLC Agreement, the Collective, not Fortress, has the sole ability and
responsibility to administer the exercise of a member's "Put Right" Jarrett Aff.,
Ex. A at § 11.2 Johnson claims that the Put Right was illusory because the deal
with Fortress did not provide for the exercise of the Put Right Compl. at ¶ 29.
However, Section 15 of the Copyright Mortgage clearly provides the Collective with
the right to obtain a release of Johnson's Catalog through exercise of a membership

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

buyout: the Put Right. Jarrett Aff, Ex C at § 15; *see also* Jarrett Aff., Ex. A at § 11.2.

On January 6, 2005, Fortress exercised its right to accelerate the Fortress Loan Agreement, stating: "Fortress hereby provides the [Collective] written notice of [Fortress's] exercise of its right to accelerate and declare all of the Obligations (as defined in the Loan Agreement) immediately due and payable. Compl at ¶ 35; Jarrett Aff., Ex. D. Due to Fortress's Notice of Acceleration, Fortress "is currently in a position to foreclose on the Bridge Loan and to take possession of Johnson's [Catalog]." Compl at ¶ 35

The Complaint does not, and cannot, allege that Fortress bleached any of its obligations under the Fortress Loan Agreement, and the Complaint does not dispute that the Collective is in breach of its obligations under the Fortress Loan Agreement The Complaint also lacks any factual allegations showing that Fortress was anything more than a lender, The only factual allegations Plaintiff makes against Fortress are:
• Using Johnson's Catalog as collateral, the Collective obtained a bridge loan from Fortress, pursuant to which Fortress provided the Collective with the funds necessary to fund its operating costs until it could securitize the catalogs of its members Compl. at 1 27.
• Fortress knew or should have known of the Put Right through its due diligence review of the Transactional Documents in connection with issuance of the Fortress Loan Agreement. *Id.* at ¶ 29
• In or about November 2004, Fortress threatened to foreclose on the Fortress Loan Agreement and to take possession of Johnson's Catalog. *Id.* at ¶ 33.
• In January 2005, Fortress sent a Notice of Acceleration to the Collective relating to the Fortress Loan Agreement. Accordingly, Fortress is currently in a position to foreclose on the Fortress Loan Agreement and to take possession of Johnson's Catalog *Id.* at ¶ 35.

Based solely upon the factual allegations set forth above, Johnson asserts three claims against Fortress: (i) declaratory relief that Johnson owns his Catalog flee and clear of Fortress's security interest (Count I); (ii) rescission and reformation of various agreements including the Fortress Loan Agreement (Count V); and (iii) recovery against Fortress for unjust enrichment (Count VI). In essence, Johnson seeks to invalidate Fortress' security interest without asserting any facts or legal theory that would entitle him to do so. The basis of the instant motion is that even if Johnson were misled and defrauded by the Collective into conveying his Catalog, Fortress acquired a security interest in the Catalog that cannot be set aside under any conceivable legal theory

*ARGUMENT*

Fortress moves to dismiss all claims against it under <u>Fed. R.Civ.P. 12(b)(6)</u> for failure to state a claim against Fortress. Assuming the truth of the factual allegations asserted in the Complaint -- and there are none that suggest that Fortress participated in any of the alleged misrepresentations or mismanagement -- Fortress is entitled to have all claims against it dismissed as a matter of law.[FN4]

> FN4. "To survive a motion to dismiss under <u>Rule 12(b)(6)</u>, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory more

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[information] than bare assertions of legal conclusions is ordinarily
required to satisfy federal notice pleading requirements" *Advocacy Org. for
Patients & Providers v. Auto Club Ins. Ass'n.*, 176 F.3d 315, 319 (6th Cir
1999) (quotations omitted) (affirming 12(b)(6) dismissal of plaintiff's
claims); *see also Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 779 (6th Cir
2000) (reaffirming the standard that bare assertions of legal conclusions are
insufficient to survive a 12(b)(6) motion to dismiss) "Legal conclusions,
deductions or opinions couched as factual allegations are not given a
presumption of truthfulness" *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.*,
854 F 2d 802, 810 (6th Cir 1988) (citing 2A Moore's Federal Practice ¶ 12 07
[2 -5] (2d ed 1987)).

I. COUNT I SEEKING DECLARATORY RELIEF AGAINST FORTRESS MUST BE DISMISSED FOR
FAILURE TO STATE A CLAIM

Johnson seeks a declaration, in relevant part, that (i) the LLC agreement is null,
void, and unenforceable, and (ii) any alleged interest in Johnson's Catalog by any
of the defendants, including Fortress, is null and void. Compl. at ¶m 38-39.
Johnson makes this claim despite the fact that Johnson executed the Subscription
Agreement -- representing that he had fully assigned, sold, transferred and
conveyed his Catalog to the Collective (Jarrett Aff., Ex. B) -- and the
acknowledged fact that he actually "pledged his Catalog Interest as collateral for
the [Fortress Loan Agreement]" (Compl. at ¶ 26). Fortress loaned the Collective
more than $12 million in exchange for promised repayment with interest and secured
the loan with the Collective's intellectual property rights, including Johnson's
Catalog. Therefore, the Collective's transfer of Johnson's Catalog to Fortress is
valid and enforceable without regard to any remedy he may be granted as to the
Collective *See infra* at § I(B).


A. The LLC Agreement Is Voidable, Not Void


As a preliminary matter, even assuming, *arguendo,* that Johnson's allegations that
he was fraudulently induced by others into signing the LLC Agreement are true, the
LLC Agreement is not void, but only voidable *See, e.g., Sims v. Banks of Commerce &
Trust Co.*, 14 Tenn. App 672, 681 (Ct App 1932) ("Even a contract obtained by fraud,
coercion and undue influence is voidable, not void."); *Williams v. Spinks*, 7 Tenn.
App 488, 1928 WL 2041, at *5 (Ct App, 1928) ("A contract obtained by fraud is not
void but simply voidable"); *see also* Restatement 2d of" Contracts § 7 cmt a
("Typical instances of voidable contracts are those ... where the contract was
induced by fraud, mistake, or duress ....")


B. The LLC Agreement Cannot Be Voided Because Fortress, As An Intervening Third-
Party, Possesses An Enforceable Security Interest In Johnson's Catalog.


Johnson's attempt to obtain a declaratory judgment that voids the LLC Agreement and
makes declarations relating to Defendants' alleged lack of interest in Johnson's
Catalog fails because -- regardless of whether Johnson was fraudulently induced to
enter into the LLC Agreement -- Fortress has an intervening security interest in
Johnson's Catalog (*see* Jarrett Aff., at Ex. C). Defrauded parties may exercise
their option to treat a contract as voidable *only* "in the absence of intervening
rights of innocent third parties." *Richardson v. Vick*, 125 Tenn. 532, 540, 145
S.W. 174, 176 (1911); *see also In re Delorenzo*, 1980 Bankr. LEXIS 4193, at *17 n 1
(Bankr M.D. Tenn Oct. 31, 1980) (finding that "the right to avoid a contract
induced by fraud must be exercised before the lights of third parties have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

intervened"); _In re Bell & Beckwith,_ 112 B.R. 858, 862 (N D. Ohio 1990) (holding
that a voidable contract "may be rescinded _before the rights of third parties have
intervened")_ (emphasis added).

Johnson recognizes that the rights of Fortress have intervened because Johnson
asserts in his Complaint that he "pledged his Catalog Interest as collateral for
the [Fortress Loan Agreement]." Compl. at ¶ 26. Fortress was not a party to the LLC
Agreement and, indeed, Fortress's only connection to the case at hand is the $12
million loan that it made to the Collective Compl. at ¶ 27 Thus, Johnson cannot
void the assignment, sale, transfer and conveyance of his Catalog to the Collective
because Fortress's rights have intervened by reason of the Fortress Loan Agreement
and the Copyright Mortgage.

    C. Johnson's Claim for Declaratory Relief Also Fails As a Matter of Law Because
Fortress Is a Secured Party Under Article 9 of Tennessee's Uniform Commercial Code

Due to the execution of the Copyright Mortgage as part of the Fortress Loan
Agreement (_see_ Jarrett Aff., Ex, C), Fortress has an enforceable security interest
in Johnson's Catalog Under Tennessee law, a "security interest is enforceable
against the debtor and third parties with respect to the collateral" where three
requirements are met: "(1) value has been given; (2) the debtor has lights in the
collateral or the power to transfer rights in the collateral to a secured party;
and" (3) one of several conditions is met, including that "the debtor has
authenticated a security agreement that provides a description of the collateral."
Tenn. Code Ann § 47-9-203

All three requirements have been satisfied in this case. First, Fortress gave value
- in the form of a $12 million loan to the Collective pursuant to the Fortress Loan
Agreement -- and thus satisfies the first prong of the Section 9-203 requirements.
Additionally, the Collective as debtor obviously "has authenticated a security
agreement that provides a description of the collateral," Tenn Code. Ann § 47-9-
203(3), since it executed a Copyright Mortgage giving Fortress a security interest
in, and setting forth a description of, the collateral, _i.e._, the compositions
contributed to the Collective and the royalties generated by those compositions
Jarrett Aff., Ex. C.

Finally, the Collective as debtor "ha[d] rights in the collateral or the power to
transfer rights in the collateral to a secured party" and/or "power to transfer
rights in the collateral to a secured party" Tenn. Code. Ann § 47-9-203(3) Even
assuming, _arguendo_, that the LLC Agreement was voidable, the Collective had lights
in the collateral sufficient to transfer a security interest to Fortress. A person
with voidable title has the power to transfer a security interest in the collateral
to a secured party _See, e.g., Kunkel v. Sprague Nat'l Bank,_ 128 F 3d 636, 642, 643
(8th Cir. 1997); _Ledbetter v. Darwin Dobbs Co.,_ 473 So 2d 197, 202 (Ala. Civ. App
1985) (reversing summary judgment against bank where bank received security
interest in vehicle from individual with voidable title); _Central Nat'l Bank of
Mattoon v. Worden-Martin, Inc.,_ 413 N.E.2d 539 (Ill App. Ct 1980) (bank perfected
its security interest through proper filing, where bank had repossessed car from
individual who took possession of the vehicle through credit sale but never paid
for it); _of. McFarland v. Ford Motor Credit Co.,_ 112 B.R. 906, 910 (Bankr. E D Tenn
1990) (noting that according to most courts, " 'rights in the collateral' encompass
almost any rights in the collateral that a debtor may have"); _In re: Coupon
Clearing Svc., Inc.,_ 113 F.3d 1091, 1103 (9th Cir. 1997) ("Where a debtor has

2005 WL 2483902 (M.D.Tenn.)                                                          Page 10
**(Cite as: 2005 WL 2483902)**


rights to collateral beyond naked possession, a security interest may attach to
such rights.")

Indeed, "[t]he consent of the true owner of the collateral is enough to give the
debtor rights in the collateral for purposes of § 9-203" *In re: Pubs, Inc. of
Champaign,* 618 F 2d 432, 436 (7th Cir. 1980). *Cf. Peterson* v. *First Tennessee Bank,*
1985 Tenn. App. LEXIS 3059, at *22 (Tenn Ct App. July 30, 1985) (equipment in
question could be used by defendant to satisfy debt of debtor, where plaintiff had
signed a note allowing debtor to use equipment in question as collateral).

Johnson voluntarily transferred rights to his Catalog to the Collective Indeed,
Johnson's signature on Schedule A of the Subscription Agreement is immediately
preceded by the following evidence of voluntary transfer:
For good and valuable consideration, the receipt and sufficiency of which are
hereby acknowledged, the undersigned .. does hereby assign, sell, transfer and
convey to The Songwriter Collective, LLC, and its successors and assigns ... all
rights now known, or which may hereinafter come into existence, in each of the
musical compositions ... set forth on Schedule A hereto including, without
limitation, the title, words and music, any and all registered copyrights relating
thereto or the full right to secure copyright registrations therein to any
unregistered Compositions, and all renewal and extension rights of copyright
thereof, worldwide all in Assignor's name, any and all claims or causes of action
whether asserted or not relating thereto and any and all current or future income
streams emanating there from

Jarrett Aff., Ex. B. at 8.

Moreover, the Collective had lights in the collateral and/or the power to transfer
rights in the collateral because Johnson consented to the Collective's use of his
Catalog as collateral Compl. at¶26. There can be no question that Johnson *knew* that
the Collective would be employing his Catalog as collateral in favor of a lender
such as Fortress because he acknowledged (on the first page of the Subscription
Agreement) "that the Catalog and/or Rights to Income being transferred to the
Company *will be used as collateral by the Company in order to secure financing* to
cover its operations and any day-to-day expenses up to and until the Initial Loan
Closing." Jarrett Aff., Ex. B at l(emphasis added). Johnson's awareness that his
Catalog would be pledged to Fortress is also evidenced by his execution of the
"Amendment" on February 13, 2004, in which he explicitly agreed to allow his
Catalog to be pledged as collateral for the Fortress Loan Agreement Compl at ¶ 26

Thus, regardless of whether Johnson was fraudulently induced by others to enter
into the LLC Agreement, Johnson voluntarily assigned and transferred his Catalog to
the Collective, which in turn granted an enforceable security interest in Johnson's
Catalog to Fortress. The Complaint does not set forth any facts to support an
argument that Fortress's rights in the Catalog have been obstructed in any way.
Consequently, Johnson's claim for a declaratory judgment must be dismissed as
against Fortress.

    II. COUNT V FOR RESCISSION AND REFORMATION MUST BE DISMISSED AGAINST FORTRESS TO
  THE EXTENT THAT SUCH RESCISSION OR REFORMATION WOULD IMPACT FORTRESS'S SECURITY
           INTEREST OR OTHER RIGHTS UNDER THE FORTRESS LOAN AGREEMENT

Count V seeks rescission of the LLC Agreement and other documents purporting to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-07369-HB    Document 27-6    Filed 11/09/2007    Page 11 of 14

2005 WL 2483902 (M.D.Tenn.)                                                    Page 11
(Cite as: 2005 WL 2483902)

bind Johnson to the obligations the Collective made pursuant to the Fortress Loan
Agreement. Compl at m¶ 64-69. Johnson would have this Court require Fortress to
return its collateral for the Fortress Loan Agreement without receiving a return of
the funds it loaned the Collective. Johnson also seeks to have the LLC Agreement
and Subscription Agreement rescinded notwithstanding the fact that Fortress relied
upon those agreements when it entered into the Fortress Loan Agreement. However,
those agreements cannot be rescinded because Fortress has rights to Johnson's
Catalog as an intervening secured party *See supra* at § I

Plaintiff's claim should also be dismissed "[b]ecause the relationship between
[Fortress and the Collective] was established by the [Fortress Loan Agreement], and
the agreement specifies that it should be governed by the laws of New York, that
state's laws should apply..." *Chase Manhattan Bank v. CVE, Inc.*, 206 F. Supp 2d
900, 907 (M.D. Tenn 2002) (holding that claim for rescission of contract should be
governed by New York law where agreement between contracting parties specified that
New York law would govern) Under New York law, Johnson's claim for rescission fails
as a matter of law because (i) rescission of the agreements which pledged Johnson's
Catalog to the Collective and provided Fortress a security interest in Johnson's
Catalog would not place the parties back in the status quo; (ii) Fortress would be
prejudiced by rescission or reformation of the Fortress Loan Agreement, the LLC
Agreement and/or the Subscription Agreement, insofar as the rescission or
reformation of those agreements interferes with Fortress's security interest in
Johnson's Catalog; and (iii) Johnson lacks standing to rescind the Fortress Loan
Agreement *See infra* at pp. 13-14

As an initial matter, to the extent that Johnson seeks to rescind the Fortress Loan
Agreement, the LLC Agreement, or the Subscription Agreement, Johnson's claim for
rescission must be dismissed as to Fortress because in order to rescind an
agreement "there must be no prejudice to the adverse party and the rescission must
put the parties back into status quo" *See CVE*, 206 F Supp 2d at 909 (*citing
Broadway-111th St. Assoc. v. Morris*, 160 A.D.2d 182, 184, 553 N.Y S 2d 153 (N.Y
App. Div. 1990)) Here, Fortress would be extremely prejudiced by rescission of the
various agreements which pledge Johnson's Catalog as collateral for the Fortress
Loan Agreement because the Collective is currently in default of the Fortress Loan
Agreement and has no ability to return to Fortress the $12 million Fortress loaned
to the Collective in consideration for that agreement.

Johnson clearly fails to allege that the parties could be put back into the status
quo. Instead, what Johnson attempts to do is to rescind various agreements which
involve Fortress's security interest in Johnson's Catalog without a corresponding
return of the $12 million Fortress loaned the Collective. Compl at p. 27. Johnson's
rescission claim fails as a matter of law because in order to rescind a contract,
the parties must be put back into the status quo. *Rudman v. Cowles Communications,
Inc.*, 30 N.Y.2d 1, 13-14, 280 N E.2d 867, 874 (N Y. 1972) (dismissing rescission
claim because rescission may only be invoked when there is no complete and adequate
remedy at law and where status quo may be substantially restored, dismissing fraud
claim and awarding damages for breach of employment agreement). *See also Singh v.
Carrington,* 2005 NY. App Div. LEXIS 5840, at *4 (2d Dep't May 31, 2005) (stating
"Rescission is not appropriate where, as here, the status quo cannot be
'substantially restored' ") *Accord A. Landreth Co. v. Schevenel*, 102 Tenn. 486,
492, 52 S W 148, 149 (Tenn. 1899) (stating that "It is an elemental principle, as
applicable to rescission of contract or settlement, by fraud or otherwise, that
upon rescission the parties must be put in status quo"); *Ingram v. Beazer Homes
Corp.*, 2003 Tenn. App. LEXIS 239, at *16-17 (Tenn. Ct. App 2003) (reversing trial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2483902 (M.D.Tenn.)                                                    Page 12
**(Cite as: 2005 WL 2483902)**

court's rescission of contract for sale of home because remedy unavailable if the
parties cannot be placed in status quo)

Second, to the extent to which Johnson has named Fortress as a patty in seeking
rescission of the LLC Agreement and the Subscription Agreement, Fortress is not a
party to those agreements and therefore cannot be named as a party for rescission
See *McGarry v. Miller, 158 A D.2d 327, 328, 550 N.Y.S 2d 896, 897 (1st Dep't 1990)*
(holding that no cause of action for rescission could be alleged against defendant,
who "was not a party to the contract") More importantly, Fortress would be
prejudiced by a rescission of the LLC Agreement and/or the Subscription Agreement
insofar as such rescission interferes with Fortress's security interest in
Johnson's Catalog Therefore, any rescission or reformation of those agreements that
would effect Fortress's security interest in Johnson's Catalog is improper under
applicable law because Fortress has secured rights as an intervening third-party.
*See supra* at § I

Finally, Johnson cannot seek to rescind agreements, like the Fortress Loan
Agreement, to which he is not a party because "only a party or one privy to a
contract may sue for rescission or cancellation." *Frymer v. Bell, 99 A D.2d 91, 96,*
*472 N.Y.S.2d 622, 625 (1st Dep't 1984)*; *see also Freidus v. Sardelli, 192 A D.2d*
*578, 580, 595 N Y. S.2d 981, 983 (2d Dep't 1993)* (same); *McGarry v. Miller, 158 A D*
*2d 327, 328, 550 N Y. S.2d 896, 897 (1st Dep't 1990)* (same); *Grossman v. Herkimer*
*County Indus. Dev. Agency, 60 A.D.2d 172, 180, 400 NY S.2d 623, 627 (4th Dep't*
*1977)* (same).

   III.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT VI) MUST BE DISMISSED FOR FAILURE
                         TO STATE A CLAIM AGAINST FORTRESS

Count VI of the Complaint seeks damages against Fortress for Unjust Enrichment and
claims that Fortress -- which made a $12 million loan in part secured by Johnson's
Catalog -- has been unjustly enriched by attainment of a security interest in
Johnson's Catalog. Compl. at ¶¶ 70-74. Johnson's claim must be dismissed because
"[t]o state a claim for unjust enrichment, the Plaintiff must demonstrate: (1) a
benefit conferred upon the defendant by the plaintiff, (2) appreciation by the
defendant of such benefit, and (3) acceptance of such benefit without payment of
the value thereof." *Chase Manhattan Bank v. CVE, Inc., 206 F.Supp.2d 900, 909 (MD.*
*Tenn. 2002)* (finding no unjust enrichment and granting a motion to dismiss, in
part, because the parties made an agreement and performed according to the terms of
that agreement). *See also Paschall's, Inc. v. Dozier, 219 Tenn. 45, 53, 407 S.W.2d*
*150, 154 (1966)* (establishing the modern Tennessee rule on unjust enrichment);
*Beaudreau v. Larry Hill Pontiac/Oldsmobile/GMC, Inc., 160 S.W.3d 874, 882 (Tenn. Ct*
*App. 2004)* (applying *Paschall's* unjust enrichment test and granting motion to
dismiss because plaintiff failed to properly allege acceptance of a benefit without
payment of the value thereof).

   A.  Johnson's Unjust Enrichment Claim Must Be Dismissed Because the Collective, Not
         Johnson, Granted Fortress a Security Interest in Johnson's Catalog

Where defendant's alleged benefit does not directly flow from the plaintiff, no
claim for unjust enrichment will stand; an indirect benefit does not qualify as a
benefit for purposes of a cause of action for unjust enrichment. *Black v. Boyd, 248*
*F.2d 156, 162 (6th Cir 1957)* (denying claim for unjust enrichment because the
payment of the money which plaintiff sought to recover was not made by plaintiff to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the defendant, but was made to a third party); *Leeper v. Cook*, 688 S W 2d 94, 96
(Tenn. Ct App. 1985) (dismissing unjust enrichment claim since "no obligation arose
between the patties because there is no privity nor transactions between the
parties establishing a basis for either a legal or equitable obligation"); *Indymac
Mortg. Holdings, Inc. v. Kauffman*, 2001 Tenn App. LEXIS 954, at *13-14 (Tenn Ct App
2001) (stating "a claim for unjust enrichment requires a legal or equitable
obligation arising from some type of privity or transaction between the parties").
*See also In re Vitamins Antitrust Litig.*, 2001 U.S. Dist. LEXIS 9585, at *44-45 (D
D.C. 2001) (dismissing plaintiff's claims for unjust enrichment based upon the lack
of facts supporting a finding of a direct benefit conferred upon defendants by
plaintiff)

Fortress has not appreciated any benefit directly from Johnson Johnson assigned his
Catalog to the Collective under the terms of the Subscription Agreement. Compl. at
16 The Collective thereafter granted Fortress a security interest in Johnson's
Catalog in exchange for Fortress's loan pursuant to the Fortress Loan Agreement.
*Id.* at I¶ 16, 27. Johnson had no contract or direct contact with Fortress and there
is therefore no basis for Johnson to assert an unjust enrichment claim against
Fortress, having failed to confer a direct benefit on Fortress

   B. Johnson's Claim For Unjust Enrichment Must Be Dismissed Because Fortress Paid
   $12 Million For Its Security Interest In the Catalogs Assigned To the Collective By
                   Its Members, Including Johnson's Catalog

Tennessee law clearly states that the "most significant requirement for a recovery
on quasi contract is that the enrichment to the defendant be unjust." *Paschall's*,
407 S.W 2d 155. Defendant Fortress would not be unjustly enriched here because
Fortress loaned the Collective $12 million and the Collective has defaulted on that
loan. Where as here, the defendant has paid value for the benefit conferred, a
claim for unjust enrichment fails as a matter of law. *See John J. Heirigs Constr.
Co. v. Exide*, 709 S W 2d 604, 607 (Tenn. Ct. App 1986) (holding that the
subcontractor was not entitled to recover damages for unjust enrichment because the
defendants had paid the entire amount due to the contractors with whom the contract
was made).

Plaintiff fully admits in his Complaint that by signing the Amendment to the LLC
Agreement, he was aware that he was pledging his Catalog as collateral for the
Fortress Loan Agreement. Compl at ¶ 26. However, he now argues that even though the
Collective is in default, it would be unjust for Fortress to foreclose on his
pledged Catalog. Compl. ¶ 70-74 Such an allegation violates the requirement that
there be acceptance of a benefit without payment of the value thereof *See
Paschall's*, 219 Tenn at 56, 407 S.W.2d at 155. Here, Fortress loaned the Collective
$12 million and Johnson was aware of, and consented to, the use of his Catalog as
collateral to secure the Fortress Loan Agreement. Compl. at ¶¶ 16, 26-27 Therefore,
as a matter of law, Johnson's claim against Fortress for unjust enrichment fails.
*See Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596-97 (Tenn.
1998) (holding that it was not unjust for defendants to retain possession of
property and improvements thereto for which they provided consideration and
dismissing unjust enrichment claims); *Heirigs*, 709 S.W 2d at 607 (stating that
because defendants paid the full contract price for the improvements to the
property, "under no stretch of the imagination could it be said that the defendants
were unjustly enriched nor could it be said that equity demands that defendants be
required to pay twice")

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2483902 (M.D.Tenn.)
**(Cite as: 2005 WL 2483902)**                                                    Page 14

*CONCLUSION*

For all of the foregoing reasons, Fortress respectfully requests that this Court enter an order dismissing all Counts of the Complaint asserted by Plaintiff insofar as they concern Fortress.

Tim JOHNSON, Plaintiff, v. THE SONGWRITER COLLECTIVE, LLC, E. Jean Mason, Bud Carr, Chuck McNeal, Robert D'Loren, and Fortress Credit Opportunities I, LP, Defendants. 2005 WL 2483902 (M.D.Tenn.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.