SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:   IAS PART 12
-----------------------------------------X
ANNIE ROBOFF,

                Plaintiff,           DECISION/ORDER
                                            Index No. 600528/05
     -against-                   Motion Seq. No. 02

E. JEAN MASON, BUDD CARR, ROBERT
D'LOREN, THE SONGWRITERS COLLECTIVE,
LLC, UCC CAPITAL CORP., FORTRESS
CREDIT OPPORTUNITIES I, LP.,

                Defendants.
-----------------------------------------X
BARBARA R. KAPNICK, J.:

    Plaintiff Annie Roboff, an award-winning songwriter, claims in this lawsuit that in or about February of 2004, she was fraudulently induced by defendants to join as a founding member of and to transfer title to a number of her songs ("the catalog") to The Songwriters Collective ("TSC" or "the Collective"), a music publishing company to be owned by the songwriters themselves. Plaintiff contends that TSC has failed to properly manage and market the catalog of her transferred songs, resulting in a sharp decline in the catalog's value.

    Plaintiff now moves for a preliminary injunction directing TSC to take all steps and to execute all documents necessary and appropriate (a) to permit the exercise by plaintiff of a certain contractually mandated "Put" to resell her Class A membership interest in TSC to TSC, (b) to obtain the transfer to plaintiff from TSC of certain copyrighted musical compositions, and (c) to obtain the release of all liens and encumbrances upon those

copyrighted musical compositions held by Fortress Credit Opportunities I, LP ("Fortress").

There is no dispute that TSC, which continues to hold title to her copyrights, is no longer functioning and currently has no acting directors or officers. Counsel for TSC, however, has put in papers in opposition to this motion.

Defendant E. Jean Mason was the Chief Operating Officer of TSC. Defendant Budd Carr was the Chief Executive and Chief Creative Officer of TSC. Neither of these parties have appeared or put in any papers in regard to this motion.

TSC's financial advisor, defendant UCC Capital Corp. and its President, Robert D'Loren, allegedly promoted the Collective and helped secure financing on its behalf. They have also not put in any papers on this motion and have taken no position on it.

TSC pledged the catalog as security for a Bridge Loan from defendant Fortress pursuant to a Loan Agreement executed on March 1, 2004. Fortress appeared and argued in support of this motion.

In order to be entitled to a preliminary injunction, plaintiff must show a likelihood of success on the merits, danger of irreparable injury in the absence of the injunction, and a balancing of the equities in her favor. See, W.T. Grant v. Srogi, 52 N.Y.2d 496, 517 (1981).

Section 11.2 of the Amended and Restated Limited Liability Company Agreement forming TSC provides as follows:

> <u>Put Option of Class A Members</u>. Beginning on the date a Class A Member contributes his/her Catalog to the Company and continuing for a period of one (1) year thereafter (the "Option Period"), each Class A Member shall have the right, upon thirty (30) days written notice to the Company during the Option Period, to put his/her Membership Interests to the Company pursuant to the terms of this Section 11.2. A Class A Member's right to put his/her Membership Interests to the Company shall be conditioned upon the following: (i) the delivery of an exercise notice to the Company during the Option Period in which the Class A Member notifies the Company of his/her intent to exercise his/her put option; (ii) the delivery by the Class A Member of any certificate with respect to his/her Membership Interests or such other documentation as reasonably required by the Company to transfer, assign and forfeit such Class A Member's Membership Interests to the Company, including such Member's Capital Account; and (iii) a payment in cash or other immediately available funds in an amount equal to the sum of (v) the unamortized allocable balance of the Debt Obligations with respect to such Class A Member as determined pursuant to Section 3.3.2, plus (w) any interest thereon, plus (x) the amount of any yield maintenance premium or other prepayment penalty charged under the terms of the Indebtedness, plus (y) an amount equal to twenty percent (20%) of the amount determined under (v) above, plus (z) the Accrued Membership Shortfall Damages, Accelerated Administration Payment and Accelerated Management Payment, if any, payable in connection with such Member and the payment of such Member's share of Class A Member Debt. Such amount shall be determined by the Board of Directors and notice of such amount shall be delivered to the Class A Member prior to the consummation of the put option by such Class A Member. <u>Upon the delivery of the items set forth in this Section 11.2, the Company shall transfer and assign to such Class A Member, the Company's right title and interest in and to the Catalog and all Compositions contributed to the Company by such Class A Member</u>. The put option granted pursuant to this Section 11.2 shall be personal to the Class A Member who contributed a Catalog and shall not be exercisable by a transferee of such Member. (underlining supplied).

The right of Class A members of the Collective, and specifically, the right of plaintiff, to exercise a "Put" option

3

was recognized by TSC and Fortress in their March 1, 2004 Loan Agreement, which provides, in relevant part, that

> Section 5.04. <u>Mandatory Repayments</u>
>
> (a). Notwithstanding the occurrence and continuance of an Event of Default, the Borrower shall be permitted to obtain a release of Collateral in connection with a Membership Buyout and the Lien of the Agent on the Collateral shall be released upon receipt of payment by the Agent of the Class A Member Debt plus interest, together with the premium, if any, applicable to a prepayment prior to the six month anniversary of the Closing Date and a prepayment premium equal to twenty percent of the Class A Member's share of the Class A Member Debt (a "Class A Debt Mandatory Repayment"). Upon the occurrence of a Membership Buyout and the payment of the amount of the Class A Debt Mandatory Repayment, the Borrower shall make a repayment of the Loan in such amount; provided, that, neither Annie Roboff nor Thomas McHugh shall be permitted to exercise a Membership Buyout for a period of six months following the Closing Date. Upon any such release, the Agent will, promptly at the Borrower's expense, execute and deliver to the Borrower such documents, and take such other action as the Borrower shall reasonably request to evidence such release.

Plaintiff claims to have delivered the items set forth in Section 11.2 and to have exercised her "Put" through a letter dated December 24, 2004 sent by her attorney. She argues that she thus has an absolute contractual right to reacquire the rights to her songs free and clear of the Fortress lien.[1]

---

[1] TSC states in its Opposition to plaintiff's motion that while plaintiff does not possess a unilateral right to exercise a "Put" option, "TSC is not necessarily averse to allowing her to do so in the near future based on some negotiated terms. Yet <u>TSC is not prepared at this moment to make that decision because there currently is no one in a position of authority to exercise that discretion on behalf of TSC</u>, and its litigation attorneys are not empowered to take such acts on behalf of the entity." (underlining supplied). For these reasons, TSC argues that this Court should deny plaintiff's motion and refuse to alter the status quo.

By letter dated December 31, 2004, Bill Roberts of TSC acknowledged receipt of the December 24, 2004 letter notifying the company of plaintiff's intention to exercise her option. TSC did not dispute plaintiff's right to exercise the "Put" option, but indicated that pursuant to the terms of the March 1, 2004 Loan Agreement, the amount required to exercise Ms. Roboff's option must be determined in part by Fortress. He further stated that "[a]ccordingly, we will act as quickly as possible to provide you [i.e., plaintiff's attorney] with the appropriate documentation and information needed to exercise Ms. Roboff's option." TSC, however, subsequently failed to provide the required documents and information.

Fortress is ready, willing and able to proceed with that transaction and has agreed with plaintiff as to the amount needed for her to reacquire title to her works.[2]

---

[2] The following was subsequently added to the end of Section 11.2(A) of the Amended Agreement:

> Anything herein to the contrary notwithstanding, if the Company shall obtain interim financing prior to the Initial Loan Closing (a "Bridge Loan") and a Class A Member shall seek to exercise the Put Option prior to the Initial Loan Closing, for purposes of (iii) above the term `Class A Member Debt' shall, with respect to such Class A Member, be an amount equal to the greater of (i) a Class A Member's Pro-Rata Share of the unpaid principal balance of the Bridge Loan and (ii) such Class A Member's Adjusted Pro-Rata Share of the Unpaid Principal Balance of the Bridge Loan. <u>If a Class A Member's Adjusted Pro-Rata Share of the unpaid principal balance of the Bridge Loan repaid by such Class A Member upon the exercise of the Put Option Exceeds the sum of such Class A Member's Undistributed</u>

5

However, it is not clear who, if anyone, currently has the authority to make decisions on behalf of TSC. (see fn. 1 above) Moreover, as TSC itself recognized on December 31, 2004 when the Collective was still governed by active directors and officers, plaintiff has a clear and unequivocal right under section 11.2 of the LLC Agreement to exercise her "Put" option.[5]

Therefore, based on the papers submitted and the oral argument held on the record on June 29, 2005, this Court finds that plaintiff has demonstrated a likelihood of success on the merits.

This Court further finds that plaintiff has demonstrated that she will suffer an irreparable injury absent the granting of the injunctive relief sought since any judgment for money damages against TSC, which appears currently to have very limited funds and few, if any, assets other than the catalog in question, will likely be ineffectual. See, Ma v. Lien, 198 A.D.2d 186 (1st Dep't 1993), lv. to app. dism'd, 83 N.Y.2d 847 (1994). Moreover, plaintiff claims that the decline in the value of her copyrights has been "precipitous" and will continue "[u]nless something is done promptly."

---

[5] There is no provision in that agreement which subjects plaintiff's right to exercise her option on her not being in breach of any other section of the agreement.

Finally, this Court finds that the balance of equities weigh in favor of plaintiff.[6]

Accordingly, plaintiff's motion for a preliminary injunction is granted, and it is hereby

ORDERED and ADJUDGED that TSC and/or its attorneys shall take all steps and execute all documents necessary and appropriate to permit plaintiff to exercise her "Put" option, to obtain the transfer of her copyrighted musical compositions, and to obtain the release of all liens and encumbrances upon those compositions,[7] and it is further

ORDERED that plaintiff is directed to post an undertaking in the amount of $1,000,000 with the County Clerk on or before the 29th day of July, 2005.

This constitutes the decision and order of this Court.

Dated: July 19, 2005

_____
BARBARA R. KAPNICK
J.S.C.

FILED
JUL 28 2005
BARBARA R. KAPNICK
J.S.C.
COUNTY CLERK'S OFFICE
NEW YORK

---

[6] This Court further notes that the Collective will likely lose all equity in its catalog even absent the granting of the preliminary injunction sought, since Fortress has indicated that it is prepared to expeditiously commence foreclosure proceedings on the defaulted loan.

[7] Although reference is made in the papers to the appointment of a Receiver pursuant to CPLR § 6401, such relief must be sought by formal motion. TSC's attorney may perform the ministerial task of executing and delivering the necessary documents if, as plaintiff suggests in her papers, no other person is currently authorized to perform such act on behalf of the Collective.