Dorothy M. Weber, Esq. (DW 4734)
SHUKAT ARROW HAFER WEBER & HERBSMAN LLP
111 West 57th Street, Suite 1120
New York, NY 10019
(212) 245-4580
Attorneys for Defendants Wayne C. Coleman and
The Royalty Compliance Organization

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FORTRESS CREDIT OPPORTUNITIES I, LP
and FORTRESS CREDIT OPPORTUNITIES II,
LP,

        Plaintiffs,

v.

WAYNE C. COLEMAN, THE ROYALTY
COMPLIANCE ORGANIZATION and MOSS
ADAMS LLP,

        Defendants.

CASE NO. 07-CV-7369 (HB)

**MEMORANDUM OF LAW IN REPLY AND IN FURTHER SUPPORT OF
DEFENDANTS' WAYNE C. COLEMAN and THE ROYALTY
COMPLIANCE ORGANIZATION'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, TO STAY THIS ACTION**

# **TABLE OF CONTENTS**

A.  The Facts Alleged in the Complaint Support Dismissal ............................................. 1

B.  The Claim Remains Time-Barred Notwithstanding A Tolling Agreement ........................ 2

C.  Alternative Motion to Stay ........................................................................................ 3

LEGAL ARGUMENT ........................................................................................................ 3

POINT I:    THE CLAIM IS TIME-BARRED ................................................................... 3

A.  The Cause of Action Accrued at the Time the Work Product Was Delivered ................... 4

    i.  The Date of Accrual Was When Plaintiffs First Could Have Relied Upon the Report - Not When They Actually Did ........................... 4

B.  The Claim Was Already Stale When the Parties Entered Into the Tolling Agreement ............................................................................................. 5

POINT II:   THE AMENDED COMPLAINT FAILS TO ALLEGE A CAUSE OF ACTION AGAINST WAYNE C. COLEMAN ............................................. 6

POINT III:  FORTRESS HAS FAILED TO STATE A CAUSE OF ACTION SINCE THEY DO NOT ALLEGE PRIVITY OF CONTRACT WITH THE RCO DEFENDANTS ............................................................................ 7

POINT IV IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION ............... 8

A.  Related Litigation .................................................................................................... 8

CONCLUSION ................................................................................................................ 10

# **TABLE OF AUTHORITIES**

### CASES

Cohen v. Abrahams, 751 F.Supp. 472 (S.D.N.Y. 1990) ........................................................... 5

Credit Alliance Corp. v. Andersen & Co., 65 N.Y. 2d 536, 551, 493 N.Y.S.2d 435, 443 (1985) ......... 7

Credit Alliance Corp. v. Arthur Andersen & Co., 101 A.D.2d 231, 476 N.Y.S.2d 539 (1st Dep't 1984), ........................................................................................................................... 4

Fleet Factors Corp. v. Werblin, 114 A.D.2d 996, 997, 495 N.Y.S.2d 434 (2d Dep't 1985) ............... 5

Harris v. New York State Dep't of Health, 202 F.Supp.2d 143 (S.D.N.Y.2002) ............................. 9

Bastys v. Rothschild, 2000 WL 1810107, *50 .......................................................................... 5

Keskal v. Modrakowski, 249 N.Y. 406, 164 N.E. 333 (1928) ..................................................... 7

Meinhard-Commercial Corp. v. Sydney, 109 A.D.2d 678, 487 N.Y.S.2d (1st Dep't 1985) ............... 5

Mencher v. Weiss, 306 N.Y. 1, 114 N.E.2d 177 (1953) .............................................................. 7

Munno v. Town of Orangetown, 391 F.Supp.2d 263 (S.D.N.Y. 2005) ......................................... 9

Ossining Union Free School Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417 (1989) ............. 7

Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992) ..... 7

Salzman Sign Co. v. Beck, 11 A.D.2d 1068, 206 N.Y.S.2d 525 (2d Dep't 1960) ........................... 7

Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co., at 708. ................................. 8

Sosnow v. Paul, 43 AD2d 978 (2d Dep't, 1974 ....................................................................... 4

Tesoriero v. MetLife, 6 Misc.3d 1005(A), 800 N.Y.S.2d 357 (Table) (N.Y. Sup. 2004) ................. 4

Ventimiglia v. Ventimiglia, 307 A.D.2d 993 (N.Y.A.D. 2 Dept., 2003) ........................................ 6

Video Corporation of America v. Frederick Flalto Associates, Inc., 85 AD2d 448, 453 (1st Dep't, 1982) ......................................................................................................................... 4

### Treatises

N.Y.Civ.Prac.L. & R. 214 (Mckinney 1990)............................................................................ 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| FORTRESS CREDIT OPPORTUNITIES I, LP and FORTRESS CREDIT OPPORTUNITIES II, LP,<br><br>             Plaintiffs,<br><br>     v.<br><br>WAYNE C. COLEMAN, THE ROYALTY COMPLIANCE ORGANIZATION and MOSS ADAMS LLP,<br><br>             Defendants. | CASE NO. 07-CV-7369 (HB) |

**MEMORANDUM OF LAW IN REPLY AND IN FURTHER SUPPORT OF DEFENDANTS' WAYNE C. COLEMAN and THE ROYALTY COMPLIANCE ORGANIZATION'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS ACTION**

A.      **The Facts Alleged in the Complaint Support Dismissal**

Plaintiffs have asserted a stale claim for professional negligence against the RCO Defendants. Plaintiffs concede that this is a claim to which a three (3) year statute of limitations is applicable. It is submitted by the RCO Defendants that the claims accrued on or about January 30, 2004 or, at the latest, by February 25, 2004: those are the facts as they are pled in the Amended Complaint.

But even were the claim not time-barred, the Amended Complaint fails in several other respects. It does not allege any basis for privity between the Plaintiffs and the RCO Defendants – much less a relationship from which any duty to the Plaintiffs could be construed. It similarly fails to assert a cause of action against Wayne C. Coleman as an individual.

The Amended Complaint does not allege the date that the RCO Report was provided to the Plaintiffs, but the original Complaint clearly admits that it received the RCO Report on or about January 30, 2004. Complaint ¶38. The Amended Complaint admits that the RCO Report "contained

data that RCO had obtained from Moss Adams." It also asserted that RCO provided Fortress with an "updated valuation of the Collateral as of February 25, 2004." Amended Complaint ¶40.

The Moss Adams Report, which Fortress acknowledges receiving on February 17, 2004 (Amended Complaint ¶17) was clear and unequivocal that it contained estimations which were "speculative." See Declaration of Dorothy M. Weber dated November 9, 2007 ("Weber Decl.") Ex. B (*See also* Declaration of Thomas R. Manisero dated September 18, 2007 in Support of Defendant Moss Adams LLP's Motion for Judgment Exhibit D thereto).

The RCO Report, which Plaintiffs acknowledge was based on the information contained in the Moss Adams Report (Amended Complaint ¶¶16 and 43) likewise contained clear and unequivocal disclaimers:

> **We make no representation either express or implied that the underlying assumptions or the projections themselves now reflect or will reflect in the future actual results as presented herein.**
> \* \* \* \* \* \* \*
> **The procedural work undertaken does not encompass copyright title search or other procedures associated with legal due diligence.**

See Declaration of Wayne C. Coleman dated November 8, 2007 ("Coleman Decl.") ¶¶4 and 6.

**B.    The Claim Remains Time-Barred Notwithstanding A Tolling Agreement**

Plaintiff and RCO entered into a tolling agreement on February 28, 2007 (Coleman Decl. Exhibit A) whereby the parties agreed to toll the running of the statute of limitations on any claims the parties might have had against one another through August 22, 2007. Although the date that appears at the top of the letter is dated February 22, 2007, it was not executed by RCO until February 27, 2007, and was not fully executed until February 28, 2007. Coleman Decl. ¶ 9.

C. **Alternative Motion to Stay**

As set forth in Defendants' underlying motion and exhibits attached thereto, the nature of the prior pending litigations evinces that it was not the <u>value</u> of the Collateral, but the fact that TSC did not have <u>title</u> to that Collateral in the first place, which caused the collapse of this transaction. Plaintiffs chose to address the substance of that application solely in a footnote (Pl. Mem. in Opp. p. 22, fn. 8).

A resolution of the issues raised in Plaintiffs' other related litigations with the TSC songwriters may serve to absolutely eradicate not only the *causation* element of their one and only claim in this action, but may serve to provide a basis for this Court's ultimate determination that, as a matter of law, the Plaintiff's alleged "reliance" on the RCO Report could not have been "reasonable." The documentary evidence submitted by Defendants in connection with these other litigations directly contradict various assertions pled by Plaintiffs in their Amended Complaint. A stay, within the sound discretion of the Court, is clearly the proper alternative if the action is not dismissed.

## LEGAL ARGUMENT

### POINT I

### THE CLAIM IS TIME-BARRED

Plaintiffs concede that the applicable statute of limitations period of their claim of professional negligence is three (3) years. Pl. Mem. in Opp. pp. 1; 10. Therefore, the only issue to be determined is when that cause of action of accrued.

A.  **The Cause of Action Accrued at the
    Time the Work Product Was Delivered**

   i. **The Date of Accrual Was When Plaintiffs
      First Could Have Relied Upon the
      Report - Not When They Actually Did**

In an effort to come up with a viable date of accrual of their professional negligence cause of action from the Amended Complaint as it is pled, Plaintiffs first posit that while a claim for the negligent preparation of "Tax Returns and Audits" would accrue on the date that the work product was received, a claim for the negligent preparation of a "valuation" in anticipation of a loan is subject to a <u>later</u> date of accrual - "when an injury occurs". Pl. Mem in Opposition p. 10. The *case law* in New York, however, holds otherwise. "[A] cause of action for professional negligence accrues upon the rendering of the professional services." <u>Tesoriero v. MetLife</u>, 6 Misc.3d 1005(A), 800 N.Y.S.2d 357 (Table) (N.Y. Sup. 2004), *citing* <u>Video Corporation of America v. Frederick Flalto Associates, Inc.</u>, 85 AD2d 448, 453 (1st Dep't, 1982); <u>Sosnow v. Paul</u>, 43 AD2d 978 (2d Dep't, 1974)).

The fact pattern and holding in <u>Credit Alliance Corp. v. Arthur Andersen & Co.</u>, 101 A.D.2d 231, 236-237, 476 N.Y.S.2d 539 (1st Dep't 1984), *rev'd. on other grounds* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), is particularly instructive. There, as here, plaintiff creditors sought to recover against the Arthur Andersen accounting firm for alleged negligence in preparation of financial statements with respect to a debtor. *Just like here*, the plaintiffs asserted that, in reliance upon a certified financial statement prepared by the defendant, plaintiffs provided financing to a debtor in excess of $15,000,000. The Appellate Division, First Department held that in an action brought by an individual or group of individuals, not in privity with a professional such as an accountant, but whose reliance on that professional's work was foreseeable, *is an action for*

4

*negligence and not one for malpractice.*[1] The court went on to affirm the lower courts holding that the Statute of Limitations did not commence to run until September 28, 1978, *when plaintiffs received the copy of the 1977 statement*, "which was the earliest date that plaintiffs could have relied upon it."[2]

In Cohen v. Abrahams, 751 F.Supp. 472, 473 (S.D.N.Y. 1990), a case relied on by the Plaintiffs, this Court wholly embraced the law of New York clearly and concisely:

> In New York, the statute of limitations for an action against an accountant based upon statements the accountant made regarding the financial condition of an entity to whom a loan has been made is three years from the date that the plaintiff received the financial statements. *See* Fleet Factors Corp. v. Werblin, 114 A.D.2d 996, 997, 495 N.Y.S.2d 434, 436 (2d Dep't 1985); Meinhard-Commercial Corp. v. Sydney, 109 A.D.2d 678, 678-79, 487 N.Y.S.2d 7, 9 (1st Dep't 1985); N.Y.Civ.Prac.L. & R. 214 (McKinney 1990).

Accordingly, since Plaintiffs admit, on the face of their Amended Complaint, that the Report was received on a date between January 30, 2004 and February 25, 2004. Amended Complaint ¶40,[3] the three-year statute of limitations would have expired on February 25, 2007 at the latest.

**B.    The Claim Was Already Stale When the
Parties Entered Into the Tolling Agreement**

The Tolling Letter stated specifically, in pertinent part, that:

> RCO, Fortress and Norhtlight [sic] mutually agree that they waive and will not assert any defense of statute of limitations or laches, or any other time related defenses (whether by contract or by law) in any such action that Fortress, Norhtlight [sic] or RCO commences

---

[1] Indeed, the one and only case cited by Plaintiffs for this "proposition" is Bastys v. Rothschild, 2000 WL 1810107, *50, a malpractice action brought against the plaintiff's former lawyer and accountant. Moreover, this Court, in *dicta*, held that "[w]here the malpractice involves a negligently prepared work product, such as annual tax returns, the action accrues "upon the client's receipt of the accountant's work product."

[2] Oddly, Plaintiffs cite various other cases which support Defendants' position. In Fleet Factors Corp. v. Werblin, 114 A.D.2d 996, 997, 495 N.Y.S.2d 434, 435-36 (2d Dep't 1985), the Court held that "where defendant accountants knew that their reports would be used by plaintiff lender ... the Statute of Limitations began to run from the date that plaintiff received the report, as that was the first date plaintiff could have relied upon the report to its detriment (citations omitted). In other words, the court held, the injury occurred when plaintiff received the inaccurate or negligently-prepared report; the fact that the injury was not perceived until a later time is irrelevant."

[3] The Amended Complaint clearly admits that the RCO Report consisted of a valuation of TSC's music catalogue "as of January 30, 2004," contained data from Co-Defendant's report dated February 17, 2004, and was, thereafter, "updated" with information "as of February 25, 2004." Amended Complaint ¶ 40. Accordingly, as alleged in the Amended Complaint, the original RCO Report was issued at some point between February 17, 2004 and February 25, 2004. The original Complaint admits that Plaintiffs had a copy of the RCO Report as early as January 30, 2004. Complaint ¶38.

against the other on or before August 22, 2007, except to the extent that such defense would have been available on or before the *date of this letter*. (Emphasis added.)

There is no question that the tolling letter was not fully executed until February 28, 2007. In point of fact, the draft of the letter which was ultimately signed by RCO was attached to an electronic mail of Mr. Harwood which identified the letter as the "**Tolling Agreement 02-27-07.pdf**". Coleman Decl. Ex. A.[4]

Plaintiffs' bald assertions that Defendants' issues with respect to the operative date of the Tolling Agreement are "incorrect and irrelevant" and "of no import" is supported by nothing other that an absolute misrepresentation of the language in that agreement: the Tolling Agreement does not specify "February 22, 2007" as the operative date as of which anything claims or defenses were waived. The February 22nd reflects the date at the top of the letter and ignores the sending and re-sending, via electronic mail, and the execution thereof a full week later and e-mails from Mr. Harwood subsequent to February 22, 2007 asking when it was going to be signed. Coleman Decl. Ex. A.

## POINT II

### THE AMENDED COMPLAINT FAILS TO ALLEGE A CAUSE OF ACTION AGAINST WAYNE C. COLEMAN

Plaintiffs concede that their action does not seek to pierce the corporate veil of RCO, but that a claim of professional negligence has been asserted against Mr. Coleman individually, separate and apart from RCO. Pl. Memo. In Opp. p. 20.

The issue that is raised by this concession is what, if any, effect did a Tolling Agreement executed between RCO and Plaintiffs have on Mr. Coleman as an individual? It is submitted that Mr.

---

[4] At a minimum, any ambiguity should be construed against the Plaintiffs, who drafted the agreement. Ventimiglia v. Ventimiglia, 307 A.D.2d 993 (N.Y.A.D. 2 Dept., 2003)

Coleman signed the Tolling Letter as an agent for a disclosed principal, acting within the scope of his authority, without any intent to bind himself personally. *See, e.g.* Salzman Sign Co. v. Beck, 11 A.D.2d 1068, 206 N.Y.S.2d 525 (2d Dep't 1960); Keskal v. Modrakowski, 249 N.Y. 406, 164 N.E. 333 (1928); Mencher v. Weiss, 306 N.Y. 1, 114 N.E.2d 177 (1953).

As set forth in his own Declaration, Mr. Coleman is merely the President of Financial Services Team, Inc., which does business as RCO. Coleman Decl. ¶1. The Tolling Letter was executed by RCO. Plaintiffs clearly could have sought to have Mr. Coleman, as an individual, sign a Tolling Agreement. They did not.

## POINT III

### FORTRESS HAS FAILED TO STATE A CAUSE OF ACTION SINCE THEY DO NOT ALLEGE PRIVITY OF CONTRACT WITH THE RCO DEFENDANTS

Since Plaintiffs have already conceded that there was no actual privity between them and either of the RCO Defendants, the only issue to be determined is whether the Amended Complaint sufficiently pleads a "relationship so close as to approach that of privity." Prudential Ins. Co. v. Dewey, Ballantine, Bushby, Palmer & Wood, 80 N.Y.2d 377, 382 (1992). It does not.

The Court of Appeals in Ossining Union Free School Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417, 424-25 (1989) discussed the "test" that Plaintiffs rely upon (set forth in Credit Alliance Corp. v. Andersen & Co., 65 N.Y. 2d 536, 551, 493 N.Y.S.2d 435, 443 (1985)) as well as other cases, holding that "In none of these cases, however, has the court erected a citadel of privity for negligent misrepresentation suits. Moreover, the Court of Appeals reiterated that the duty to nonprivies is defined "narrowly":

> We have declined to adopt a rule permitting recovery by any "foreseeable" plaintiff who relied on the negligently prepared report, and have rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen by the defendants (Credit Alliance Corp. v. Andersen & Co., 65 N.Y.2d at 553, n. 11, 493 N.Y.S.2d 435, 483 N.E.2d 110).

7

The Court, instead, held that something more would be required: reliance by the plaintiff that was "the end and aim of the transaction."

The Court of Appeals has since held that the mere foreseeability of the plaintiff's use of the audit opinion, even buttressed by a direct contact with the plaintiff during the audit, could not support a claim of negligent misrepresentation. Security Pacific Business Credit, Inc. v. Peat Marwick Main & Co., 79 N.Y.2d 695, 708 (1992).

## POINT IV

## IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION

A.   **Related Litigation**

Plaintiffs' dismissive assessment of the related litigation outlined and attached to Defendants' moving papers as having "no relevant connection" hereto, is incorrect.

This related litigation not only directly relates to the claims herein, but has already demonstrated that the collapse of the Collateral was not caused by any mistake in valuation. On the contrary, these other plaintiffs have charged that the Collateral was obtained by fraud in the first instance (including fraud claims against Fortress).

The substance of those proceedings has already served to directly contradict many of the allegations, and elements of the claim, contained in the Amended Complaint, *to wit*: *That highly sophisticated investors such as Plaintiffs - self-described as "a leading global alternative asset manager with approximately $43.3 billion in assets under management as of June 30, 2007" – who are in the business of, among other things, providing commercial financing, would have made a 12 million dollar loan to a debtor on the basis of a valuation report of Collateral which the debtor represented ownership of - without a shred of legal due diligence to verify those very ownership*

8

*rights.* If that is true, then the issue of failure of the Loan is one of failure of legal due diligence because the collateral was not owned or controlled by TSC – not because it was overvalued.

This Court may take judicial notice of public records and of "admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action" Munno v. Town of Orangetown, 391 F.Supp.2d 263 (S.D.N.Y. 2005) (*quoting* Harris v. New York State Dep't of Health, 202 F.Supp.2d 143, 173 (S.D.N.Y.2002)).

Plaintiffs' assertions in their footnote 8 are also entirely misleading. The fact that songwriter Annie Roboff prevailed on her motion for a preliminary injunction and secured the return of various titles by Order dated July 19, 2005 "seven months after Fortress provided notice of default to TSC" is irrelevant. That very Order clearly sets forth the timeline of Ms. Roboff's claim – beginning, indeed, almost seven months earlier on December 24, 2004, when Ms. Roboff sent her first letter setting forth her position in connection with the return of those song titles.

As of June of 2006, at least four (4) other actions brought by other former TSC songwriters who raised claims "duplicative" of Roboff's were pending in Tennessee. Weber Decl. Ex. F (Order/Decision of Judge Kapnick dated May 31, 2006 in which the case was transferred to Tennessee on the grounds of *forum non conveniens* and the fact that the matter was duplicative of claims asserted in various other cases in Tennessee).

The Amended Complaint admits that the RCO Defendants were hired to "provide TSC with a valuation of the catalogue of assets of TSC." Amended Complaint ¶39. Indeed, Mr. Coleman has also verified that whatever services were performed by RCO related to valuation, and not legal title to, the catalog of songs. Coleman Decl. ¶6.

## CONCLUSION

For the foregoing reasons, the RCO Defendants respectfully request that the Court grant their motion in its entirety and that the Amended Complaint be dismissed in its entirety or, in the alternative, that the action be stayed.

Dated:  December 21, 2007
        New York, New York

>                       Respectfully submitted,
>                       SHUKAT ARROW HAFER WEBER & HERBSMAN, L.L.P.
>
>                       By: _____
>                           Dorothy M. Weber (DW 4734)
>                           Attorneys for Defendants
>                           111 West 57th Street, Suite 1120
>                           New York, New York 10019
>                           (212) 245-4580

To:   Michael C. Harwood (MH-4227)
      Kasowitz, Benson, Torres & Friedman LLP
      Attorneys for Plaintiffs
      1633 Broadway
      New York, New York 10019
      (212)506-1709

To:   Thomas R. Manisero [TM-8548]
      Wilson, Elser, Moskowitz, Edelman, & Dicker LLP
      Attorney for Defendant Moss Adams LLP
      150 East 42nd Street
      New York, New York 10017-5639
      (212) 490-3000